Hearing Date:  October 24, 2013 at 10:00 a.m.
Objection Deadline:  October 17 at 5: 00 p.m.

Rubin LLC
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212. 390.8054
Fax: 212.390.8064
E-mail: prubin@rubinlawllc.com
Paul A. Rubin

Counsel for Breakers Capital LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                                          Chapter 11

SOLERA HOLDINGS L.L.C.,                       Case No. 13-20006 (RDD)

                      Debtor.
---------------------------------------------------------x

## MOTION OF BREAKERS CAPITAL LLC FOR ADEQUATE PROTECTION

Breakers Capital LLC ("Breakers"), by its counsel Rubin LLC, hereby submits this motion for adequate protection pursuant to Sections 361 and 363 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001(a).  In support thereof, Breakers respectfully represents and alleges as follows:

### SUMMARY

1.      This is a single asset real estate case. Breakers is by far the Debtor's largest creditor and its only mortgagee.  Since filing its bankruptcy petition in July on the eve of Breaker's adjourned foreclosure sale, the Debtor has not made any motion to use cash collateral nor has made any good faith effort to provide adequate protection of Breakers' interests in the Debtors' real property or the rents it generates.  Breakers has not seen any evidence that the Debtor enjoys any equity in its property, and the Debtor failed to pay pre-petition real estate

taxes and related charges in an amount exceeding $280,000, which are accruing interest on a daily basis post-petition.

2.      The Debtor has ignored Breakers' repeated requests for adequate protection except to say that it is not spending any rents.  The Debtor has not offered replacement liens to the extent of any diminution in value of Breakers' collateral since this case was commenced.  The Debtor has not provided even basic information such as the location or balances of the account(s) in which it is holding rents, nor has it has provided Breakers with copies of any leases or service contracts for the property, and it has not disclosed what expenditures it proposes to make with respect to the property.  As the Debtor apparently does not intend to use rents to operate or maintain the property, such rents should be turned over Breakers rather than sitting unused in an undisclosed bank account.

3.      The Debtor's approach is troubling.  It does not appear that the Debtor is prepared to honor its obligations as a debtor-in-possession entrusted with property in which a secured creditor holds an interest.  Though the Debtor's mortgage held by Breakers prohibited it from any direct or indirect transfer of ownership in its real property, the Debtor has disclosed that forty-nine percent of the ownership interests in the Debtor have purportedly been transferred to one Vinod Chand, who has inserted himself into this case as a Debtor representative.

4.      Breakers is the holder of an absolute assignment of the rents generated by the Debtor's real property, but the Debtor's counsel has advised Breakers that it believes that Breakers holds only a security interest in the rents.  Breakers advised the Debtor that it is currently willing to defer litigation over the question of whether the rents constitute property of the Debtor's estate while the property is stabilized, but the Debtor must comply with the statutory requirement of providing adequate protection.  The Debtor's blatant disregard of

2

Breakers' suggested forms of adequate protection and failure to offer the sort of typical adequate

protection provisions that are standard and expected in similar cases precipitated the filing of this

motion.

## BACKGROUND

5.      The Debtor owns the real property located at 216 East 53rd Street, New

York, New York (the "Property") consisting of a four-story plus cellar, walk-up commercial-use

building in which one tenant, a restaurant owned or controlled by a principal of the Debtor,

utilizes the ground floor, second floor and the cellar levels.   The Property also includes two

office units, one per floor, on the third and fourth floors.    It is unclear for what purposes those

office units are being used.

6.      The Debtor executed and delivered a Consolidated First Mortgage

Promissory Note dated November 9, 2006 (the "Note") in favor of Breaker's assignor, BPD

Bank ("BPD"), evidencing the Debtor's indebtedness to BPD in connection with a loan to

Debtor (the "Loan") the original principal amount of $3,500,000. A copy of the Note is annexed

as Exhibit A to the accompanying Declaration of Paul Rubin dated October 3, 2013 submitted in

support of the Motion (the "Rubin Decl.").

7.      To secure its obligations to BPD pursuant to that note, the Debtor

executed a Consolidated Mortgage and Security Agreement dated November 9, 2006 (the

"Mortgage") that encumbers the Property, which was duly recorded in the New York City

Department of Finance's Office of the City Register for New York County on December 4, 2006

(the "Office of the City Register") (Ex. B to Rubin Decl.), together with a Mortgage

Consolidation Extension and Modification Agreement dated November 9, 2006 that was

executed and delivered by the Debtor to consolidate that mortgage with prior recorded mortgages into a single lien (Ex. C to Rubin Decl.). The Note was annexed to and recorded with the Mortgage and is also part of the public record. The Debtor also delivered to BPD an Assignment of Leases and Rents of the Property executed by the Debtor in favor of BPD Bank dated as of November 9, 2006 (the "Assignment of Rents"), which was recorded in the Office of City Register on December 4, 2006 (Ex. D to Rubin Decl.).

        8.    The Assignment of Rents provides, in part:

> KNOW ALL MEN BY THESE PRESENTS THAT as of the 9th day of November 2006, SOLERA HOLDINGS, L.L.C. . . . hereby conveys, transfers assigns unto Assignee [BPD], its successors and assigns, all of the rights, interests and privileges: (A) which Assignor [Debtor] as lessor has and may have in the leases, subleases, contracts, licenses or other agreements now existing or hereafter made and affecting the use and/or occupancy of the Mortgaged Property . . . by any lessee, or any part thereof, as any such document may have been, or may from time to time hereafter modified, extended, and renewed (all of the foregoing rights, interests and privileges being collectively referred to as the "Leases") . . .

> TOGETHER with all rents, income security deposits and profits arising from said Leases and renewals thereof, if any (collectively, the "Rents") . . . .

> This is an absolute, unconditional, present and true Assignment (and not pledged as security) and is made in connection with the following: (i) the obligations of Assignor under a certain Note (the "Note") between Assignor and Assignee dated NOVEMBER 9, 2006, as the same may be amended, restated, replaced or modified from time to time . . . evidencing a loan in the principal amount of THREE MILLION FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($3,500,000) (the "Loan"), and all increases, extensions, amendments or modifications of the Loan, and all additional loans made hereafter, if any, by Assignee to Assignor or its successors and assigns….

It is hereby understood and agreed that this Assignment shall be effective immediately but that the Assignee agrees not to exercise its rights hereunder until an Event of Default occurs.  Upon the occurrence of an Event of Default, Assignor's license to collect Rents shall automatically termination with or without notice, and Assignee at its option, under order of court or by operation of law, may enter and take possession of the Mortgaged Property with or without foreclosing or other legal action, and manage the same, and whether or not in possession, may collect all or any Rents accruing from such Leases, collect all or any sums due or becoming due under such guaranties and surety agreements, evict lessees, bring or defend any suits in connection with the possession of the Mortgaged Property in its own name or Assignor's name, make such repairs as Assignee deems appropriate, and perform such other acts in connection with the management and operation of the Mortgaged Property as Assignee, in its sole discretion, may deem proper.  Upon occurrence of an Event of Default, Assignor shall deliver to Assignee the originals of all Leases of the Mortgaged Property or any portion thereof.  This Assignment shall be an assignment and not merely a pledge of all such Leases to Assignee, and Assignor will execute any further assignments reasonably necessary to perfect the transfer of such Leases to Assignee.

9.     The Note and Mortgage were subsequently modified by (a) a Modification Agreement dated as of November 9, 2009 recorded in the Office of the City Register on January 28, 2010 (attached to which was an Amended Note in the amount of $3,500,000, executed by Debtor, extending the term of the subject loan to February 9, 2010); and (b) a Modification Agreement dated as of December 10, 2010 (Ex. E to Rubin Decl.), which was recorded in the Office of the City Register on December 22, 2011 (annexed to which was a Modified and Restated Note in the amount of $3,500,000, executed by Debtor so as to, among other things, extend the maturity date of the subject loan to January 15, 2012)(Ex. F. to Rubin Decl.).

10.     Debtor failed to repay the Loan when it matured.  On or about May 10, 2012, BPD commenced a foreclosure action against the Debtor and others with respect to the

Property in the Supreme Court of the State of New York for the County of New York (the "New York Court").

11.    Pursuant to an Assignment of Mortgage dated May 31, 2012 that was recorded in the Office of the City Register on July 12, 2012, BPD assigned to Breakers all of its right, title and interest in and to the Mortgage and the note secured thereby. (Ex. G to Rubin Decl.).  Pursuant to an Assignment of Assignment of Leases and Rents also dated May 31, 2012 and also recorded in the Office of the City Register on July 12 2012, BPD assigned to Breakers all of its right, title and interest under the Assignment of Rents.  (Ex. H to Rubin Decl.).

12.    On June 6, 2013, the Honorable Carol E. Huff of the New York Court (the "Judgment") signed in the foreclosure action an Order and Judgment in favor of Breakers in the amount of $4,718,891.22 together with interest thereon accrued from and after January 13, 2013. (Ex. I to Rubin Decl)  The Judgment authorized a public auction foreclosure sale of the Property under the direction of an appointed referee, Paul R. Sklar, Esq.

13.    A foreclosure sale of the Property was scheduled to proceed on July 17, 2013.  But on that date, Debtor and Breakers, through their respective counsel, entered into a stipulation which recited that "Defendants have requested an adjournment of the sale for one week in order to complete a private sale of the Property."  (Ex. J to Rubin Decl. at p.1, ¶ C). Pursuant to that stipulation, Breakers agreed to adjourn the sale until July 24, 2013, and the Debtor agreed to pay Breakers the sum of $20,000 and to withdraw with prejudice the notice of appeal it had filed in the foreclosure action from the judgment entered by the State Court in favor of Breakers.  But for the execution of the July 17, 2013 stipulation, the foreclosure sale of the Property would have proceeded on that date.

6

14.     The Debtor did not complete a private sale of the Property.  Instead, on July 23, 2013 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

15.     The Debtor continues to operate and manage its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed.

16.     Pursuant to the Assignment of Rents, the rents generated by the Property were absolutely assigned to Breakers before this case was commenced, and accordingly they do not constitute property of the Debtor's estate.  Though the Debtor contests this point, at a minimum the rents generated by the Property would constitute Breakers' cash collateral that the Debtor could not spend without authorization to do so from either the Court or Breakers.  To date, the Debtor has neither sought nor obtained either.

17.     By letter dated August 14, 2013 to Debtor's counsel (Ex. K to Rubin Decl.), Breakers' counsel expressed several concerns Breakers has regarding the Debtor's behavior regarding the Property.  In that letter, Breaker's counsel advised Debtor's counsel that Breakers has not consented to the use of cash collateral and Debtor was required to segregate all cash collateral and to provide an accounting, and Breaker's counsel requested a rent roll and copies of leases for the Property and a proposed cash collateral budget.  Breaker's counsel also requested confirmation that the Debtor would not enter into any new leases or lease amendments without Breaker's prior written consent.  In that letter, Breakers also reserved its rights with respect to the question of whether rents generated by the Property constitute property of the Debtor's estate.

7

18.    By letter dated September 10, 2013 to Debtor's counsel (Ex. L to Rubin Decl.), still in the dark regarding the Debtor's collection, use and/or deposit of rents, Breakers reiterated its position regarding the rents and repeated its requests for adequate protection of its interests in the Property and the rents.

19.    To date, the Debtor's position has been that it is not spending rents generated by the Property and that Breakers is not entitled to adequate protection in any other form.

20.    On August 20, 2013, the Debtor filed with this Court its Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA") [Docket No. 12] (the "Schedules").   The Schedules list large unsecured claims held by insiders (including a $400,000 claim held by Rufino Lopez).   The SOFA do not disclose the amount of revenue collected by the Debtor in 2012, while the Schedules disclose that the Debtor did not have a single dollar in any bank account when it filed this case.  The Schedules list the Debtor's main tenant, a restaurant entity known as Solera Corp., which is controlled by a principal of the Debtor, as the holder of a general unsecured claim in the amount of $232,000.  The SOFA list someone named Vinod Chand as the holder of 49% of the membership interests in the Debtor, whereas documents executed by the Debtor in connection with its transactions with Breakers' assignor list different individuals as the holders of those interests.  When and how Vinod Chand became an owner of the Debtor is unknown.

21.    Notably, the Mortgage includes a covenant from the Debtor that it will "[w]ithout the express prior written consent of Mortgagee in its absolute discretion, make or permit no Transfer in the ownership or control of the Mortgaged Property."  (Mortgage at §5.10,

8

p.6).  The Mortgage defines the term "Transfer" as "any change in ownership or control, whether or not that change is voluntary, involuntary or by operation of law, direct or indirect or by merger . . . or by any pledge, mortgage, assignment, sale, lease . . . transfer or disposal of any kind.  (Appendix A to Mortgage, p.30).

22.    Breakers has several additional concerns regarding the Debtor's bankruptcy case.  For example:

- Solera Corp. appears to enjoy the benefits of a "sweetheart" lease with the Debtor, a copy of which Breakers has not seen.  The amount of rent owed to, or that has been collected by, the Debtor from Solera Corp. is unknown.

- Breakers has not seen any proposed cash flow projections or budgets for the Property.

- The Debtor failed to pay pre-petition real estate taxes owed respect to the Property in the amount of $257,102, and water and sewer charges in the amount of $27,592.

- The Debtor has not shared with Breakers copies of any offers the Debtor has received with respect to the Property.

- The activities being conducted on the third and fourth floors of the Property are unknown and remain a mystery.  The Schedules list the Japanese Executive Club as the holder of a month-to-month lease, but Breakers has not seen any such lease.

- The Local Bankruptcy Rule 1007-2 Affirmation signed by Rufino Lopez [Docket No. 1] asserts (at Paragraph 10 thereof) the existence of a "partnership dispute" among owners of the Debtor without describing the nature of the dispute or its potential impact on the Debtor.

## ARGUMENT

### THE DEBTOR MAY NOT USE RENTS GENERATE BY THE PROPERTY WITHOUT FIRST ADEQUATELY PROTECTING BREAKERS' INTEREST THEREIN

#### The Bankruptcy Code Requires the Debtor to Provide Breakers Adequate Protection of its Security Interest in the Rents

24.    By operation of Section 552(b) of the Bankruptcy Code, the lien and interests granted to Breakers under the Mortgage and the Assignment of Rents in any interest of the Debtor in the Property and any rents or profits produced by the Property, attaches to, and provides Breakers a security interest in, all such property acquired by the Debtor after the Petition Date.  Section 552(b) of the Bankruptcy Code provides, in pertinent part:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).

25.    Section 363(e) of the Bankruptcy Code provides the standard that must be satisfied for a debtor to use any property in which another party has a security interest:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

26.     Additionally, Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease "cash collateral" unless "each entity that has an interest in such collateral consents" or "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [Section 363]." 11 U.S.C. § 363(c)(2); See In re Vienna Park Properties, 976 F.2d 106, 114 (2d Cir. 1992)(Section 363(c)(2) of the Bankruptcy Code "prohibits the debtor's use of . . . assets without the secured creditors' consent or court authorization.").

27.     Section 363(a) of the Bankruptcy Code defines "cash collateral" to include "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rent, or profits of property . . . whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

28.     The term "adequate protection" is not expressly defined in the Bankruptcy Code. But Section 361 of the Bankruptcy Code sets forth three non-exclusive methods by which a security interest may be adequately protected:  (a) periodic cash payments; (b) the grant of additional or replacement liens; and/or (c) the grant of other relief resulting in the "indubitable equivalent" of an entity's interest in the subject property. See 11 U.S.C. § 361.

29.     The provision of adequate protection is mandatory, not discretionary. See In re Metromedia Fiber Network, Inc., 209 B.R. 487, 491 (Bankr. S.D.N.Y. 2003).  The burden of proving adequate protection of a non-debtor's property falls squarely on the Debtor, and must be established by clear and convincing evidence.  11 U.S.C. § 363(p)(1); see, e.g., Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. (In re Scottsdale Med. Pavilion), 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993), aff'd, 52 F.3d 244 (9th Cir. 1995) ("Under § 363[(p)(1)], the debtor bore

the burden of proof on the issue of adequate protection."); In re O.P. Held, Inc., 74 B.R. 777, 784 (Bankr. N.D.N.Y. 1987)(holding that debtor requesting court authorization for use of cash collateral "must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case" (quoting Northern Trust Co. v. Leavell (In re Leavell), 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985)); In re Polzin, 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) ("[D]ue to the fact that the collateral is consumed or used up in a § 363 context and the creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one . . .  It is the Debtor's burden to demonstrate that the secured party is adequately protected." (citations omitted)).

### Special Protection is Afforded to a
### Secured Creditor's Interest in Cash Collateral

30.     The Bankruptcy Code provides special protections to ensure that secured creditors are not deprived of their interests in cash collateral by the unauthorized use thereof, which could otherwise result in rapid dissipation of such collateral.  See, e.g., In re Kleather, 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting Section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral' for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on `cash collateral' is not deprived of its collateral through unprotected use by the Debtor")(quoting In re Mickler, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981)); 3 Lawrence P. King, Collier on Bankruptcy ¶363.03[4][c] (15th ed. rev. 2005) (noting the "unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral").  As one court noted: "[T]he standard of adequate protection to be afforded a creditor when its cash collateral is being

used should be a high one. . . .  To ask a creditor to release cash requires a strong likelihood of return."  In re Berens, 41 B.R. 524, 528 (Bankr. D. Minn. 1984).

### The Debtor's Collection of Rents Without Paying Taxes Diminishes Breaker's Interest in its Collateral and Facilitates Dissipation of Cash Collateral

31.    Here, the Debtor has not moved for court authorization to use any of Breaker's cash collateral it may be holding.  The Debtor is collecting rent from its tenants, including an entity controlled by a principal of the Debtor and the Debtor has failed to pay real estate taxes and water and sewer charges since its last payment in January 2010.  Breaker's security interest is being harmed in at least two ways:

32.    First, the rents, once placed in the hands of the Debtor, will at a minimum constitute Breaker's cash collateral, and unless this Motion is granted, nothing will have been done to provide Breaker's with adequate protection of its interest in that cash collateral.  The Debtor will be free to dissipate such funds as and when it may please for any reason—without notice or warning.  It would be fundamentally unfair, and contrary to the various provisions of the Bankruptcy Code cited above, to allow the Debtor to handle and expend such funds without adequate protection of Breaker's security interest in that cash collateral.

33.    Second, the pre-petition taxes and water and sewer charges owed to the City of New York are accruing interest on a post-petition basis at the rate of 18% compounded daily, and the full amount owed to the City on such amounts constitutes a lien that, under applicable law, primes Breaker's first mortgage lien.  See 11 U.S.C. § 511; NYC Administrative Code §§ 11-301 & 11-224(g); In re Coney Island Amusement, Inc., 05 Civ. 08238 (LBS)(S.D.N.Y. Mar. 13, 2006)(Sand, J.); In re P.G. Realty Co., 220 B.R. 773 (Bankr. E.D.N.Y. 1998).

13

34.     When the value of a secured creditor's collateral is declining subsequent to commencement of a bankruptcy case, the secured creditor lacks adequate protection.  See Elmira Lith, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)("Accordingly, the secured creditor lacks adequate protection if the value of its collateral is declining as a result of the [automatic] stay."); In re Delaney-Morin, 304 B.R. 365, 370 n.3 (B.A.P. 9th Cir. 2003)("A secured creditor lacks adequate protection if there is a threat of a decline in the value of the property.").

35.     The Debtor may argue that Breakers is protected by an alleged equity cushion in the Property.  There are two defects in that argument.  First, there is no evidence that any such cushion exists.  The Debtor cannot simply assign a value to its Property out of thin air and declare that Breakers is adequately protected.  The Debtor cannot ignore the statutory requirement that it adequately protect Breaker's interest in cash collateral held by the Debtor.  Second, any such equity cushion is being eroded each day by the continued accrual of unpaid taxes and interest thereon.

36.     Accordingly, at a minimum, Breakers needs and is entitled to adequate protection of its interest in the Cash Collateral.

**The Debtor Should be Required to Segregate and Account for Breaker's Cash Collateral**

37.     Section 363(c)(4) of the Bankruptcy Code expressly requires a debtor to "segregate and account for any cash collateral" in its possession, custody or control beyond what is authorized to be used pursuant to Section 363(c)(2).  The Bankruptcy Code does not contemplate the expenditure of cash collateral except as authorized by the Court or consented to by Breakers in advance, and it prohibits the commingling of Breaker's cash collateral with other property.  See In re Brandon Assoc., 128 B.R. 729 , 734 (Bankr. W.D. Va. 1991) (cash collateral in excess of amounts necessary to operate property should be segregated); In re Constable Plaza Assoc., 125 B.R. 98, 102 (Bankr. S.D.N.Y. 1991) (cash collateral in excess of amounts necessary

14

to operate the mortgaged property should be turned over to mortgagee); In re Raleigh/Spring

Forest Apts. Assoc., 118 B.R. 42, 46 (Bankr. E.D.N.C. 1990)(net rents should be held for

mortgagee's benefit).  Accordingly, while its bankruptcy case is pending, the Debtor should be

required to deposit all rents it receives from the Property into a separate account into which no

funds from any other source should be deposited.

### The Adequate Protection Breakers Requests

38.     Applicable case law makes clear that the concept of adequate protection is

flexible, and that the listed examples of adequate protection listed in Section 361 of the

Bankruptcy Code are not limiting.  Rather, courts have the power to fashion forms of adequate

protection that fit the circumstances of each particular case.  See In re O.P. Held, Inc., 74 B.R. at

782 (noting that Section 361 "has been consistently interpreted as not containing an exclusive

list" of forms of adequate protection); In re Lane, 108 B.R. 6, 8 (Bankr. D. Mass. 1989 (§361

does not purport to contain an exhaustive list of the specific ways for a Debtor to provide

adequate protection)).  3 Collier on Bankruptcy, ¶363.05 ("circumstances of the case will dictate

the necessary relief to be given").

39.     Pursuant to Section 363(e) of the Bankruptcy Code, Breakers is entitled to

adequate protection from the diminution in value of its collateral subsequent to the Petition Date.

Breakers requests that the Debtor be required to provide such adequate protection as follows:

(a) the Debtor must remit to Breakers, (i) within five days after entry of the order
granting this Motion, an amount equal to the amount of the rents it has collected since the
Petition Date; and (ii) going forward, no later than the fifteenth day of each month, an amount
equal to the amount of rents it has collected since its most recent turnover of rents to Breakers;

(b) all amounts owed to Breakers pursuant to the order approving this Motion
shall be administrative expenses and have priority status pursuant to Section 503(b)(1)(A) of the
Bankruptcy Code;

(c)  the Debtor shall grant Breakers replacement liens, to the extent of any
diminution in value of Breakers' collateral following the Petition Date, on any and all assets or

property that the Debtor may acquire or receive after the Petition Date, which replacement liens will be senior to all other secured claims other than amounts owed to the City of New York for unpaid real estate tax and water and sewer charges. The replacement lien shall be deemed perfected as of the Petition Date;

(d) All cash collateral of Breakers must be deposited in a segregated account which shall contain nothing but rents of the Property, and Breakers shall have a replacement lien on the funds in that account consistent with the foregoing;

(e) The Debtor must, within three days of entry of the order granting this Motion, file with the Court an affidavit listing all bank, security and other accounts in which financial assets of the Debtor have been deposited or maintained, whether in the name of the Debtor or in the name of any other person or entity, within the past three years. To the extent any funds remain in any such accounts that are not new debtor-in-possession accounts opened since the Petition Date, such funds must be transferred into a debtor-in-possession account forthwith. Account numbers and locations of any and all debtor-in-possession accounts must be disclosed to Breakers and the Office of the United States Trustee forthwith, and the Debtor must file with the Court an affidavit attesting to compliance with this transfer requirement;

(f) Within ten days after entry of the order granting this Motion, the Debtor must file a full accounting all Property rents collected by the Debtor during the year preceding the Petition Date through the date of the order, including disclosure of all payments and disbursements made from Property rents during such period;

(g) The Debtor will not expend any Property rents without advance written consent of Breakers;

(h) The Debtor will grant Breakers access to its financial and operating records during normal business hours upon reasonable advance written notice as Breakers may request from time to time, and the Debtor will make available a representative having knowledge of its assets and business affairs to answer questions that Breakers may have during such a review;

(i) Within seven days of entry of the order granting this Motion, the Debtor will deliver to Breakers copies of all leases (including subleases, amendments and renewals) and service contracts that were or are in effect with respect to the Property from the period beginning one year prior to the Petition Date through the date of the order;

(i) The Debtor must provide information regarding its insurance to Breakers as Breakers may reasonably request;

(j) The rights and liens granted to Breakers under the order granting this motion shall survive entry of an order dismissing this case.

16

## JURISDICTION

40.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## NOTICE

41.    Notice of this Motion has been served upon the following parties:  (i) attorneys for the Debtor, (ii) the Office of the United States Trustee, (iii) the unsecured creditors listed in the Debtor's SOFA; and (iv) any party that filed a notice of appearance in this case.

## NO PRIOR REQUEST

42.    No previous application for the relief sought herein has been made to this or any other Court.

## RESERVATION OF RIGHTS

43.    Breakers reserves the right to amend or supplement this Motion, and to ask the Court for additional forms of adequate protection or for relief from the automatic stay should the circumstances so warrant.

[Remainder of Page Intentionally Left Blank]

**WHEREFORE**, Breakers respectfully requests that this Court enter an order substantially in the form of the Proposed Order annexed hereto as <u>Exhibit "B"</u>, granting Breakers adequate protection of its interest in the Property and the rents generated thereby, and that the Court grant Breakers such other and further relief as the Court deems just and equitable.

Dated: New York, New York
   October 3, 2013

        RUBIN LLC

        By:<u>\s\ Paul A. Rubin</u>
          Paul A. Rubin

        345 Seventh Avenue, 21st Floor
        New York, New York 10001
        Tel: 212.390.8054
        Fax: 212.390.8064
        prubin@rubinlawllc.com

        Attorneys for Breakers Capital LLC