Hearing Date:  October 24, 2013 at 10:00 a.m.

Rubin LLC
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212. 390.8054
Fax: 212.390.8064
E-mail: prubin@rubinlawllc.com
Paul A. Rubin

Counsel for Breakers Capital LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                          Chapter 11

SOLERA HOLDINGS L.L.C.,                      Case No. 13-20006 (RDD)

                  Debtor.
--------------------------------------------------------x

**BREAKERS CAPITAL LLC'S (I) REPLY IN FURTHER SUPPORT OF ITS MOTION TO TAKE RULE 2004 EXAMINATION AND (II) OBJECTION TO DEBTORS' MOTION FOR ORDER ENFORCING THE AUTOMATIC STAY AND TO HOLD BREAKERS CAPITAL LLC IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY AND AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULES 2004, 7026 AND 9014**

Breakers Capital LLC ("Breakers"), by its counsel Rubin LLC, hereby submits its

(I) reply in further support of its motion dated August 26, 2013 for authorization to conduct a

Rule 2004 examination of the Debtor [Docket No. 13]("Breakers' Rule 2004 Motion") and its

(II) objection to the motion dated October 10, 2013 of Solera Holdings L.L.C. (the "Debtor")  for

an order enforcing the automatic stay, to hold Breakers in contempt of court for violating the

automatic stay and authorizing the Debtor to take discovery of Breakers under Rules 2004, 7026

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Debtor's Motion")[Docket No.

27].  In support thereof, Breakers respectfully represents as follows:

## INTRODUCTION

1.      This is a single asset real estate case commenced on July 23, 2013, one day before Breakers' adjourned foreclosure sale was scheduled to take place. Breakers is by far the Debtor's largest creditor and its only mortgagee. Breakers has filed motions seeking to take Rule 2004 discovery from the Debtor and to compel the Debtor to provide adequate protection of Breaker's interests in the Debtor's real property and the rents generated thereby.

2.      In response, the Debtor objected to Breakers' Rule 2004 Motion, and it then filed its own motion seeking, essentially, (i) to hold Breakers in contempt for allegedly violating the automatic stay and (ii) to take its own Rule 2004 discovery from Breakers. All of these motions are scheduled to be heard before this Court on October 24, 2013.

3.      Breakers' Rule 2004 Motion seeks information that is traditionally within the scope of permitted Rule 2004 discovery of a debtor—information relating to the value of the Debtor's real property, Debtor's cash, bank accounts, leases, contracts, financial performance, Debtor's efforts to reorganize or refinance its property, and Debtor's transactions with insiders. There is no connection between the desired Rule 2004 discovery and the state court foreclosure action in which Breakers obtained a pre-petition judgment of foreclosure and sale, as to which, the Debtor acknowledged in a stipulation filed in state court, it has no grounds to overturn.

4.      The Debtor is not entitled to an order holding Breakers in contempt. Breakers took no post-petition enforcement action against the Debtor or its Property and has bent over backwards quickly to demonstrate to the Debtor that it is now seeking to enforce its rights in state court solely against non-debtor, co-defendant guarantors.

5.      Nor is the Debtor entitled to the sweeping and open-ended Rule 2004 discovery that it seeks. Furthermore, the Debtor should not be permitted to use Rule 2004 to

2

obtain discovery to support either its contemplated motion practice in the foreclosure action or claims similar to those already rejected by the State Court that would be barred by the <u>Rooker-Feldman</u> or res judicata doctrines.

## STATEMENT OF FACTS

6.     The Court is respectfully referred to the accompanying Affidavit of Edward S. Feldman sworn to on October 16, 2013 (the "Feldman Aff.") for a statement of relevant facts concerning: (i) Breakers' pre-petition state court action against the Debtor and non-debtor guarantors of the loan to Debtor held by Breakers, including the July 17, 2013 stipulation that he negotiated pre-petition with counsel of record for the Debtor and non-debtor guarantors in the State Court Action[1], and (ii) the motion he submitted to the State Court to sever the State Court Action and to obtain a clarification that the judgment entered by the State Court in the State Court Action also applies to the non-debtor guarantors.

7.     The Debtor owns the real property located at 216 East 53rd Street, New York, New York (the "Property") consisting of a four-story plus cellar, walk-up commercial-use building in which one tenant, a restaurant owned or controlled by a principal of the Debtor, utilizes the ground floor, second floor and the cellar levels.   The Property also includes two office units, one per floor, on the third and fourth floors.

8.     The Debtor executed and delivered a Consolidated First Mortgage Promissory Note dated November 9, 2006 (the "Note") in favor of Breaker's assignor, BPD Bank ("BPD"), evidencing the Debtor's indebtedness to BPD in connection with a loan to Debtor (the "Loan") the original principal amount of $3,500,000. A copy of the Note is annexed as Exhibit A to the Declaration of Paul Rubin dated October 3, 2013 [Docket No. 23] (the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Feldman Aff.

"Rubin Decl.") previously submitted to the Court in support of Breaker's Motion for Adequate

Protection.  Three individuals and one corporation executed and delivered guarantees to BPD in

connection with the Loan.

        9.     To secure its obligations to BPD pursuant to that note, the Debtor

executed a Consolidated Mortgage and Security Agreement dated November 9, 2006 (the

"Mortgage") that encumbers the Property, which was duly recorded in the New York City

Department of Finance's Office of the City Register for New York County on December 4, 2006

(the "Office of the City Register") (Ex. B to Rubin Decl.), together with a Mortgage

Consolidation Extension and Modification Agreement dated November 9, 2006 that was

executed and delivered by the Debtor to consolidate that mortgage with prior recorded mortgages

into a single lien (Ex. C to Rubin Decl.).

        10.    Debtor failed to repay the Loan when it matured.  On or about May 10,

2012, BPD commenced an action to foreclose on its mortgage (the "State Court Action") against

the Debtor and certain non-debtors with respect to the Property in the Supreme Court of the State

of New York for the County of New York (the "State Court").

        11.    Pursuant to an Assignment of Mortgage dated May 31, 2012 that was

recorded in the Office of the City Register on July 12, 2012, BPD assigned to Breakers all of its

right, title and interest in and to the Mortgage and the note secured thereby. (Ex. G to Rubin

Decl.).  Pursuant to an Assignment of Assignment of Leases and Rents also dated May 31, 2012

and also recorded in the Office of the City Register on July 12 2012, BPD assigned to Breakers

all of its right, title and interest under the Assignment of Rents.  (Ex. H to Rubin Decl.).

12.    On January 8, 2013, the Supreme Court Justice Carol E. Huff signed an order in the State Court Action that states, in part:  "Judgment is granted to Plaintiff against all Defendants for default on the Note and Mortgage and Guaranty."  Ex. A to Feldman Aff.

13.    On June 6, 2013, Justice Huff the Honorable Carol E. Huff of the State Court signed in the foreclosure action an Order and Judgment in favor of Breakers in the amount of $4,718,891.22 together with interest thereon accrued from and after January 13, 2013. (the "Judgment") (Ex. C-2 to Feldman Aff.).  The Judgment authorized a public auction foreclosure sale of the Debtor's Property under the direction of an appointed referee, Paul R. Sklar, Esq.

14.    A foreclosure sale of the Property was scheduled to proceed on July 17, 2013.  Just prior to scheduled sale, Debtor's counsel in the State Court Action, Lawrence Morrison, Esq., advised Mr. Feldman that the Debtor needed one week from July 17 to conclude a sale of the Property and pay-off Breakers' claim in full.  Feldman Aff., ¶ 27.   On July 17, Debtor and Breakers, through their respective counsel of record in the State Court Action, entered into a stipulation (the "July 17, 2013 Stipulation"), which recited that "Defendants have requested an adjournment of the sale for one week in order to complete a private sale of the Property."  (Ex. D to Feldman Aff.).  Pursuant to that stipulation, Breakers agreed to adjourn the sale until July 24, 2013, the Debtor agreed, among other things, to pay Breakers the sum of $20,000, and to withdraw with prejudice the notice of appeal it had filed in the foreclosure action from the judgment entered by the State Court in favor of Breakers.   The Debtor also acknowledged in the July 17, 2013 Stipulation that it had no defense in the Action and there was no basis to overturn the State Court's Judgment (of foreclosure and sale).  (Ex. D to Feldman Aff. at ¶3).   But for the execution of the July 17, 2013 stipulation, the foreclosure sale of the Property would have proceeded on that date.

5

15.     The Debtor did not complete a private sale of the Property.  Instead, on July 23, 2013 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## ARGUMENT

## I.      THE DEBTORS' OBJECTION TO BREAKERS' RULE 2004 MOTION SHOULD BE OVERRULED

16.     Debtor argues in opposition to Breakers' Rule 2004 Motion, in conclusory fashion, that the State Court Action constitutes a pending action and appeal which encompasses "similar issues and the same real property and improvements."  Debtors' Rule 2004 Objection dated September 12, 2013 at ¶ 3.  But the Debtor's Rule 2004 Objection does not identify any issues that are supposedly currently in litigation or in dispute in the State Court Action or how Breakers' Rule 2004 Motion supposedly seeks discovery in connection any such issue(s).

17.     In fact, Breakers' Rule 2004 examination seeks information regarding:  (i) efforts of the Debtor to reorganize or refinance its Property, (ii) the value of the Property, (iii) Debtor's cash, bank accounts, leases, contracts, and the financial performance of the Property, and (iv) transactions or agreements between or among the Debtor and insiders, or purported insiders.  These are all matters that fit squarely within the scope of a traditional Rule 2004 examination, and they are not topics that the Debtor has anywhere identified as being at issue in the State Court Action.

18.     The Debtor is acutely aware that, pursuant to the July 17, 2013 Stipulation, it has (i) agreed to withdraw its appeal from the Judgment and (ii) conceded that it has no defense in the State Court Action and no grounds to overturn the Judgment. (Ex. D to Feldman Aff., ¶ 3).  To argue that Debtor may still challenge the Judgment in the state courts, the Debtor's proposed bankruptcy counsel has figuratively thrown the Debtor's pre-petition state

6

court litigation counsel "under the bus."  In the Debtor's Objection to Breakers' Rule 2004 Motion, the Debtor states in sweeping fashion, without any support, that the "Debtor never viewed or executed this agreement [the July 17, 2013 Stipulation], neither knew of its terms when it made payment nor received reasonably equivalent value for the payment of $20,000." Debtor's Objection at ¶6.

19.     It is, to say the least, bizarre for the Debtor to claim that it gave its state court litigation counsel $20,000 to pay to Breakers on behalf of the defendants in that litigation as part of an agreement to delay the foreclosure sale of its sole asset, but the Debtor never ascertained all of the terms of the agreement before the payment was made, never saw the written agreement under which that money was paid, and did not know its terms when it made the payment.  Notably, the Debtor has not filed an affidavit under penalty of perjury alleging that the Debtor and guarantors did not authorize Mr. Morrison to agree to any specific term contained in the July 17 Stipulation.  In any event, if Debtor truly has any gripe regarding the July 17, 2013 Stipulation as stated in its Rule 2004 Objection, it should direct its wrath against its own counsel who appeared in the State Court Action on its behalf, not against Breakers.

20.     A stipulation made by an attorney may bind a client even where it exceeds the attorney's actual authority if the attorney had apparent authority to enter into the stipulation. Hallock v. State of New York, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984); Davidson v. MTA, 44 A.D.3d 819, 819, 844 N.Y.S.2d 359 (2d Dep't 2007).  Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.  Hallock, 64 N.Y.2d at 230; Davidson, 44 A.D.3d at 819.  There is no evidence of any of that here.  To the contrary, the Debtor reaped the benefit of its bargain:  In return for its payment and agreement not to contest

7

the foreclosure action, Breakers refrained from conducting the foreclosure sale on July 17 and agreed to delay the foreclosure sale until July 24. The Debtor's ownership breached its agreement under the July 17 Stipulation not to take action to thwart the foreclosure sale. That is the only reason that the Debtor still holds title to the Property today.

21. In another attempt to wriggle out of its agreement pursuant to the July 17 Stipulation, the Debtor has alleged that Breakers fraudulently advertised the foreclosure sale before the Judgment was issued and suggests that this somehow induced its state court attorney, Mr. Morrison, to sign the July 17 Stipulation on Debtor's behalf. Debtor's Motion at ¶13. But the Debtor's allegation is inaccurate. The foreclosure sale was advertised after the Judgment was signed and before it was entered by the State Court. Not surprisingly, the Debtor has not cited any New York statute or case to support the notion that a foreclosure sale may not be advertised until after the signed judgment authorizing the sale has been entered. Nor has the Debtor cited any authority standing for the proposition that a foreclosure sale conducted after entry of a judgment of foreclosure and sale should be invalidated if the sale was advertised before a signed foreclosure judgment was actually entered.

22. In its Motion dated October 10, 2013, the Debtor has threatened to seek to challenge judgments, orders and rulings issued by the State Court, but there is no such litigation pending. The Debtor's threat to pursue litigation in the State Court is not a basis to deny Breakers the right to conduct a Rule 2004 examination—especially since the Debtor acknowledged in the July 17, 2013 Stipulation that it has no valid basis to overturn the Judgment. The topics as to which Breakers is seeking Rule 2004 discovery is not related to issues that the Debtor has suggested it will raise to challenge such judgments, orders and rulings.

23.     Accordingly, Breakers is entitled to take Rule 2004 discovery from the Debtor as sought in its Rule 2004 Motion.

## II.     THE REQUEST TO HOLD BREAKERS IN CONTEMPT SHOULD BE DENIED

### A.     The Debtor's Bankruptcy Filing Did Not Stay the State Court Acton as Against the Non-Debtor Guarantors

24.     The Debtor's Motion to hold Breakers in contempt for violation of the automatic stay is based on the incorrect notion that the Debtor's bankruptcy filing stayed the entire State Court Action as against all defendants, including all non-debtor guarantors.  See Debtor's Motion at ¶ 20 ("On September 19, 2013, Breakers filed a motion in the (stayed) Foreclosure Action . . . ."); Debtor's Motion at ¶ 36 ("The Debtor also requests that the Court hold that any action in or by the State Court made in the Foreclosure Action after the Petition Date, is void and declare that the Foreclosure Action is stayed."); Debtor's Motion at ¶ 33 ("Without relief from the Automatic Stay, Breakers cannot ask the State Court for even a portion of the relief it is requested.").  Indeed, the Debtor's concluding request for relief asks the Court to "enter the Order (i) finding the Foreclosure Action is stayed by the Automatic Stay . . . ." Debtor's Motion at 15.

25.     While the Debtor's Motion does not seek expressly the extraordinary relief of an injunction under Section 105 of the Bankruptcy Code to extend the automatic stay to protect any non-debtors, the Motion seeks as a remedy "enforcement of the stay for the benefit of the Debtor and non-Debtor parties."  Debtor's Motion at ¶ 35.[2]

---

[2] Extending the automatic stay to non-debtor defendants is a narrowly applied exception to the well-established rule that the stay is limited to debtors, and most if not all courts consider the extension of the automatic stay to a non-debtor to be extraordinary relief.  In re McCormick, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008).  The automatic stay may only be extended to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the Debtor's estate."  Queenie, Ltd. v. Nygard, Int'l, 321 F.3d 282, 287-88 (2d Cir. 2003).  While the Debtor's Motion seeks "enforcement" of the automatic stay and protection of non-debtor

26.     It is well-established, however, that the automatic stay provisions of Section 362(a) of the Bankruptcy Code apply only to the debtor, and cannot be construed to apply to its co-defendants as well. <u>Teachers Insurance and Annuity Ass'n of America v. Butler</u>, 803 F.2d 61, 65 (2d Cir. 1986); <u>Capital One, N.A. v. Margiotta</u>, 2012 NY Slip Op 51526(U) (Sup. Ct. Kings Cty. 2012); <u>In re Anje Jewelry Co.</u>, Inc. 47 B.R. 485, 486 (Bankr. E.D.N.Y. 1983).  Since the automatic stay does not extend to non-bankrupt co-defendants, an action may proceed against such co-defendants.  <u>Rosenbaum v. Dane & Murphy</u>, 189 A.D.2d 760, 761 (2d Dep't 1993).

27.     Accordingly, Breakers was fully entitled to seek to prosecute the State Court Action as against the non-debtor co-defendants in the State Court Action, and that was all it intended to do.

**B.     Breakers Quickly Bent Over Backwards to Demonstrate that it Sought To Proceed Only as Against the Non-Debtor Defendants in the State Court Action**

28.     As set forth in the accompany affidavit of Breakers' counsel in the State Court Action, Edward Feldman, Esq., Breakers obtained pre-petition an order from the State Court granting judgment in favor of Breakers against all of the defendants in the State Court Action.  Feldman Aff., ¶ 13.  Thereafter, on June 6, 2013 the State Court signed the Judgment awarding Breakers judgment in the sum of $4,718,891.22, and authorizing a referee to conduct a foreclosure sale of the Debtor's real property.  Debtor's suggestion that the Judgment—which

---

defendants in the State Court action, the Debtor has not commenced an adversary proceeding seeking such injunctive relief as would be required (see FRBP 7001(7)), nor has it made any evidentiary showing that there would be an immediate adverse economic consequence to its estate should the State Court Action proceed as against the four non-debtor guarantors. Breakers reserves the right to submit a full recitation of the legal and factual reasons why a §105 injunction should not issue in favor of the non-debtor guarantors in this case, should the Debtor apply for one.

liquidates the amount owed to Breakers in connection with the Loan and authorizes a foreclosure sale of the Debtor's real property—is not against the Debtor is untenable.

29.    The foreclosure sale was scheduled for July 17, 2013, but at the request of Debtor's counsel, Mr. Morrison, Breakers agreed to adjourn the sale for one week pursuant to the July 17 Stipulation that was signed by counsel for all of the defendants in the State Court Action and Breaker's counsel, based on the premise that the Debtor needed one week to complete a proposed sale of the Property and to pay Breakers' Judgment in full.  Feldman Aff., ¶¶ 27-30.

30.    After the Debtor filed this chapter 11 case on the eve of the adjourned foreclosure sale, Breakers decided to proceed against the non-Debtor guarantors in the State Court Action.  Feldman Aff., ¶ 33.  As noted above, before the Debtor's bankruptcy filing, Breakers had already obtained judgment against all of the defendants in the State Court Action (Ex. A to Feldman Aff.), and the order authorizing the foreclosure sale had specified the amount of Breaker's secured claim under its loan documents with the Debtor to be satisfied from the foreclosure sale (Ex. C to Feldman Aff.).

31.    Breaker's counsel, Mr. Feldman, determined that it was appropriate to ask the State Court to sever the action, clarify that the June 6, 2013 Judgment applied not only against the Debtor but also against the non-Debtor guarantors, and to seek leave to enforce its rights as against the non-debtors.  Feldman Aff., ¶ 33.  Given Breakers' procurement of the aforementioned judgment against all defendants, a judgment of foreclosure and sale, and the Debtor's bankruptcy filing, Breakers believed (and continues to believe) that the State Court should authorize it to proceed to enforce its judgment against the non-debtor guarantor defendants.

32.    Accordingly, on September 19, 2013, Breakers filed an Application for Order Severing Enforcement, seeking (i) an order modifying the judgment to name specifically all of the defendants in the case (because one could have argued that the Judgment applied only against the Debtor, since it did not name the individual defendants), (ii) leave to pursue to non-debtor guarantors notwithstanding the election of remedies doctrine, and (iii) severance of the action as against the non-debtor guarantors.  Feldman Aff. ¶ 33.  To be clear, this application was not intended to seek enforce any rights or obtain new and different relief against the Debtor or property of the Debtor's bankruptcy estate.  Feldman Aff. at ¶¶ 36, 50.

33.    By letter dated October 1, 2013, Debtor's proposed bankruptcy counsel protested that it was not served with this motion, even though it is not counsel of record for any party in the State Court Action and has never applied to be substituted in as counsel for any party in that action.  Debtor's proposed bankruptcy counsel also argued in his letter that the September 19 motion constituted a violation of the automatic stay and that Breakers was improperly trying to enforce the July 17 Stipulation against the Debtor via that motion.

34.    Mr. Feldman quickly responded by letter that same day, explaining that the purpose of the September 19 motion was to permit Breaker to proceed against the non-debtor guarantors, and indeed, no proposed order had yet been submitted to the State Court in connection with the September 19 motion.  Feldman Aff., ¶ 41.  Though not required to, in order to demonstrate to the Debtor's counsel that Breakers was not seeking any new relief against the Debtor, Mr. Feldman attached to his October 1, 2013 letter a copy of a proposed order he was prepared to submit to the State Court in connection with the September 19 motion, which does not even mention the entry of judgment against the Debtor at all, and which further specifies that it would have no effect on the Debtor at all.  Feldman Aff., ¶ 41.

35.     Not satisfied with this clarification, Debtor's proposed bankruptcy counsel wrote Mr. Feldman on October 2, 2013 insisting that he withdraw the September 19, 2013 motion.  But the State Court (i) had already awarded judgment against the Debtor and (ii) had also signed a judgment of foreclosure and sale that quantified the precise amount of Breaker's claim before the Debtor's bankruptcy filing, so any mention of the Debtor in an amendment to the pre-petition Judgment would be mere surplusage and was unnecessary.  After all, it is inconceivable that the June 6, 2013 Order and Judgment was not a judgment against the Debtor, who was the borrower under the relevant note and mortgage, the owner of the property to be sold, and the lead defendant named in the case.

36.     Therefore, on October 2, 2013, in order to further demonstrate clearly and unequivocally that Breakers had absolutely no intent whatsoever of prosecuting the State Court Action against the Debtor given its bankruptcy filing, and that Breakers was seeking merely to assert its rights in the State Court action against the non-debtor defendants in the State Court Action, Mr. Feldman submitted to the State Court a Notice of Partial Withdrawal of Motion explaining that the motion dated September 19, 2013 was withdrawn to the extent it could be interpreted or deemed to seek any relief against the Debtor.  Mr. Feldman submitted with that letter a proposed order that would grant Breaker relief against the non-debtor defendants, including severance of the State Court Action, and which explicitly states that it would not in any way affect previous orders or judgments entered by the State Court with respect to the Debtor. Feldman Aff., ¶ 44, 47.

37.     The Debtor's Motion asserts that the Notice of Partial Withdrawal of Motion was not served on Debtor's proposed bankruptcy counsel.  Debtor's Motion at ¶ 26.  In fact, Mr. Feldman emailed that Notice and his explanatory letter to the State Court to Debtor's

proposed bankruptcy counsel—and accidentally to Your Honor as well—on October 2, 2013 at

1:18 p.m.  Feldman Aff., ¶ 45 and fn.1.

38.     Despite all of Breakers' good faith efforts to respond promptly to the

Debtor and clarify beyond question that it had no intent of seeking relief in the State Court

against the Debtor or its property, the Debtor filed its ill-advised Motion seeking to hold

Breakers in contempt.

### C.     Debtor Has Not Come Close to Demonstrating an
### Entitlement to Have Breakers Held in Contempt of Court

39.     Missing from the Debtor's Motion is any discussion of the legal

requirements for holding a party in contempt for violating the automatic stay.

40.     To prevail on a motion for contempt sanctions for conduct violating the

automatic stay, the movant must prove (a) an actual violation of the automatic stay, and (b) the

presence of malicious intent or the absence of good faith.  In re Chateaugay Corp., 920 F.2d 183,

186-87 (2d Cir. 1990); In re Coney Island Land Co., LLC, 2005 Bankr. LEXIS 2909, 11 (Bankr.

E.D.N.Y. Mar. 31, 2005).  The standard of proof for holding a party in contempt for violating the

automatic stay is "clear and convincing evidence."   In re Florio, 229 B.R. 606, 608 (Bankr.

S.D.N.Y. 1999).

41.     In determining whether a party's conduct violates the automatic stay,

courts look to the substance and not the form.  In re Adelphia Communications Corp., 345 B.R.

69, 76 (Bankr. S.D.N.Y. 2006).  Courts seek to guard against an "excessively litigious approach"

to violations of the automatic stay that do not cause damages in and of themselves.  Coney Island

Land Co., 2005 Bankr. LEXIS at *11 (citing In re Saratoga Springs Plastic Surgery, PC, 2005

U.S. Dist LEXIS 2046, 2005 WL 357207, *5 (N.D.N.Y. Feb. 11, 2005)).

42.     In this case, Breakers has made every effort to clarify that it is not seeking to prosecute the State Court Action as against the Debtor following its bankruptcy filing. Though not required to, it forwarded to Debtor's bankruptcy counsel a proposed order that explicitly states that relief is not being sought against the Debtor in connection with the September 19 motion.  After Debtor's counsel persisted, Breaker's state court litigation counsel even withdrew that motion as it relates to the Debtor.  These communications took place between October 1 and October 2.

43.     There was no malice, and Breakers has at all times acted with the good faith belief that it is seeking, post-petition, new relief only against the non-debtor guarantors. Moreover, the mere filing of the September 19 motion—withdrawn as against the Debtor by October 2--did not cause the Debtor any damages, especially since the Debtor's counsel claimed in his October 1 letter that he did not even know about the motion until the time to respond to it had elapsed.   Breakers respectfully submits that the Debtor's Motion was completely unnecessary and nothing but a strategic ploy designed to protect the non-debtor guarantors and to divert the Court's attention from Breakers' pending motions for authorization to conduct a Rule 2004 Examination and for adequate protection, which are also scheduled to be heard on October 24, 2013.

## III.    THE DEBTOR'S RULE 2004 EXAMINATION REQUEST IS OVERLY BROAD AND DEBTOR SHOULD NOT BE PERMITTED TO USE A RULE 2004 AS A TOOL TO CHALLENGE THE STATE COURT'S ORDERS, JUDGMENTS AND RULINGS.

### A.    The Debtor's Rule 2004 Requests

44.     In its Motion, the Debtor seeks, among other things:

> (i)    blanket authorization from this Court to subpoena documents not described in the motion, without further order of the Court;

    (ii)      authorization to depose not only two representatives of Breakers named in the Motion, but also the right, in its sole discretion, to choose to subpoena and examine another unnamed representative of Breakers, without further order of the Court;

    (iii)     production of "all documents" related to its loan or loan documents, without further clarification as to what documents are being sought or for what purpose;

    (iv)     documents that are clearly intended to develop Debtor's planned challenge to orders, judgments and rulings of the State Court, in violation of the Rooker-Feldman doctrine, and despite (i) the Debtor's agreement to withdraw its Notice of Appeal filed in the State Court Action; (ii) Debtor's stipulation in the State Court Action (Ex. D to Feldman Aff.) that it has no defense to the Judgment; and (iii) the <u>Rooker-Feldman</u> and res judicata doctrines.

    (v)      All documents related to one John Sullivan;

    (vi)     All documents related to Breakers' "corporate make-up" and "corporate purpose."

### B.   The Debtor's Stated Reasons for Taking Rule 2004 Discovery

45.    The Motion states that the "thrust of the Discovery relates to Breaker's claim against the Debtor, partially arising from a default judgment, and, upon information and belief, by inequitable conduct."  Motion at ¶ 4.  The Motion further alleges that:  (i) Breakers failed to serve unspecified documents upon the Debtor and its co-defendants in the State Court Action; (ii) Breakers breached alleged but unspecified agreements to modify its loan; and (iii) Breakers (somehow) fraudulently induced the Debtor's counsel to enter into the July 17 Stipulation entered in the State Court Action and fraudulently advertised the foreclosure sale of the Property, "in contravention of the New York Real Property law."  Motion at ¶¶ 4, 11, and 13.

46.    The Motion discloses that the Debtor is considering whether to move to reargue a June 6, 2013 decision issued in the State Court Action based on overlooked or "later discovered evidence, and the inequitable conduct of Breakers in procuring the Foreclosure Decision."  Debtor's Motion at 12.

47.    Significantly, the Debtor's Motion does not attach or disclose the text of the State Court's June 6, 2013 memorandum decision (which is separate and apart from the Judgment entered the same day).

48.    In that decision, the State Court denied a motion filed by Mr. Morrison on behalf of Mr. Lopez seeking to vacate prior orders entered in the State Court Action.  The State Court wrote, in relevant part:

> Other than asserting that he was not represented by counsel, Lopez [Debtor's principal] offers no excuse for failing to respond to numerous papers served upon him in connection with this matter.  Also, Lopez's unsupported contention that plaintiff agreed orally to modify the loan agreement so as to forbear prosecuting the foreclosure is unavailing, since the modification was not in writing . . . .
>
> Finally, Lopez's contention that plaintiff lacked standing because it did not hold the mortgage or note at the time the action commenced is without merit. It is undisputed that the original plaintiff had standing, and that its interests were properly transferred to the current plaintiff pursuant to this Court's order dated January 8, 2013.

(Ex. C-1 to Feldman Aff.).

49.    It is evident that the Debtor is seeking to take Rule 2004 discovery in order to develop information that could be used to challenge this and other decisions and orders entered by the State Court.  As discussed below, that is not a proper basis for taking a Rule 2004 examination.  The Debtor should not be permitted to use Rule 2004 as basis to take discovery in support of claims that are barred by the Rooker-Feldman and res judicata doctrine.

**C.    The Debtor's Misstatement of the Standard for,
And Intended Misuse of, a Rule 2004 Examination**

50.    The Debtor argues that "[i]t is also well established that the scope of an examination under FRBP is underfettered . . . ."  Debtor's Motion at 38 (emphasis added).  That is wrong.  While the permitted scope of a Rule 2004 exam is broad, it is not unfettered.

51.     Rule 2004 provides in pertinent part that "[t]he examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b).

52.     Although broad in scope, a Rule 2004 examination is limited.  See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).  "Despite the breadth of Bankruptcy Rule 2004, 'it must *first* be determined that the examination is proper.'"  Id. at 842 (emphasis in original) (internal citations omitted).  A Rule 2004 examination is proper where there is a nexus between the materials sought by the subpoena and the needs of the requesting party as a party in interest in the bankruptcy case.  See Id.

53.     Where discovery sought under Rule 2004 is too broad, the court may limit the scope.  See In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (noting that while a Rule 2004 examination "can legitimately be compared to a fishing expedition," "the net, in the discretion of the Court, can be carefully stitched to limit its catch."); In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (limiting scope of Rule 2004 examination after noting that the movant's "definition of the word 'document' is obviously too broad and borders on the ridiculous.").

54.     An important limitation on the scope of a 2004 examination is that Rule 2004 may not be used to seek materials to discover information for use outside the bankruptcy case.  Enron, 281 B.R. at 842.  Accordingly, should the Court authorize the Debtor to take Rule 2004 discovery, Breakers asks that it be limited in scope so that the Debtor is not permitted to make abusive and improper use of Rule 2004.

55.     Specifically, courts have held that a 2004 examination may not be used "where the party requesting the 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed 2004 examinee."  Id.  See also In re Lufkin, 255 B.R. 204, 208-09 (Bankr. E.D. Tenn. 2000); Coffee Cupboard, 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991); In re Interpictures, Inc., 86 B.R. at 29.   Indeed, the court in Snyder v. Soc'y Bank, 181 B.R. 40, 42 (S.D.Tex.1994), aff'd sub nom. In re Snyder, 52 F.3d 1067 (5th Cir. 1995), described the use of Rule 2004 to further interests in a state court action as "an abuse."

56.     Here, the Debtor unquestionably seeks the Rule 2004 examination to aid it in its contemplated litigation in the State Court to vacate Breakers' foreclosure judgment and to mount a challenge to Breaker's claim in this case, despite the existence of (a) the June 6 Judgment liquidating Breaker's secured claim as of January 31, 2013; and (b) the July 17, 2013 Stipulation.  The Debtor's Motion is peppered with references to purported deficiencies related to the orders, judgments and rulings that Breakers obtained in the State Court Action, and it describes potential motion practice that the Debtor may initiate in the State Court.

57.     To the extent that the Debtor is contemplating bringing challenges in this Court to the judgments, orders and ruling entered pre-petition by the State Court, the Rooker-Feldman doctrine would bar the Debtor from doing so.  Under the Rooker-Feldman doctrine, a federal bankruptcy court lacks subject matter jurisdiction to sit in review of state court decisions. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Book v. Mortgage Elec. Registration Systems, 608 F. Supp.2d 277, 288 (D.Conn. 2009)(citing Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).

58.     The Second Circuit Court of Appeals has identified four elements that must be satisfied in order for Rooker-Feldman to apply:

59.     First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. McKithen v. Brown, 481 F.3d 89, 97 (2d Cir. 2007)(internal citation omitted and alteration in original).  A challenge in this Court to the amount of Breaker's secured claim as fixed by the State Court's Judgment would satisfy all four elements of the test for applying the Rooker-Feldman doctrine.  Debtor lost in the State Court, it is complaining about a Judgment fixing the amount of Breaker's claim against it and authorizing a foreclosure sale, it is articulating legal theories to advance herein so this Court would grant relief that would alter or vitiate the Judgment, and the Judgment was issued and entered before this bankruptcy case was filed.

60.     Debtor argues that the Rooker-Feldman doctrine does not apply to a default judgment.  That is incorrect.  See Salem v. Paroli, 260 B.R. 246, 254 (S.D.N.Y. 2001)(applying Rooker-Feldman to preclude review of a state court default judgment); see also Lombard v. Lombard, No. 00–CIV–6703 (SAS), 2001 WL 548725, at *3–4 (S.D.N.Y. May 23, 2001) (applying Rooker–Feldman to preclude review of stipulation of settlement executed in connection with state court proceeding even though applicant argued that the stipulation should be declared null and void because he was under duress at the time it was executed).

61.     In In re Ward, 423 B.R. 22 (Bankr. E.D.N.Y. 2010), a foreclosure sale was conducted prior to the filing of the bankruptcy petition. When the successful purchaser sought relief from stay in the bankruptcy case to proceed to evict the debtor, the debtor opposed the

20

motion. The debtor argued that the foreclosure judgment was flawed because "no original note was produced," "the mortgage was rescinded", "the plaintiff in the action doesn't exist" or "was not a proper party to the foreclosure action", and that "everything was done irregularly and underneath [the] table." In re Ward, 423 B.R. at 27.  The court in Ward overruled the debtor's opposition and found that each of the elements of the Rooker-Feldman doctrine was satisfied.

62.    According to most courts, the Rooker-Feldman doctrine does not apply to allegations of extrinsic fraud, which involves the party's opportunity to have a full and fair hearing.  In re Ward, 423 B.R. at 29.  But the argument that a foreclosure judgment was fraudulently obtained through intrinsic fraud is barred by the Rooker-Feldman doctrine.  See id. at 30.  For example, the Rooker-Feldman doctrine barred a borrower from attacking a state court foreclosure judgment on the grounds that her signature on a deed was fraudulently obtained.  See In re Slater, 200 B.R. 491, 495 (E.D.N.Y. 1996).

63.    Thus, the Debtor is barred by the Rooker-Feldman doctrine from raising in this Court any collateral attack against the State Court's Judgment based on its allegations that Breakers engaged in fraudulent conduct.  That being the case, it would not be justified to permit the Debtor to use Rule 2004 to try to take discovery that it could use to launch in this Court a collateral attack against the State Court's Judgment based on such allegations.

64.    To the extent that the Debtor wishes to take discovery in furtherance of a potential claim that Breakers breached an oral agreement to modify the loan agreement or to attack the Judgment based on allegations of intrinsic fraud (lack of opportunity for a full and fair hearing), such claims would be barred under the doctrine of res judicata.  The State Court already rejected such claims in its June 6, 2013 memorandum decision denying the motion to vacate the default judgments that it entered in the State Court Action.  Ex. C-1 to Feldman Aff.

65.     Res judicata relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, prevents inconsistent decisions and encourages reliance upon adjudication.  See Allen v. McCurry, 449 U.S. 90, 94 (1980). It is not a mere matter of practice or procedure, but a rule of fundamental and substantial justice, of public policy and private peace, which should be cordially regarded and enforced by the courts.  See Federated Dep't Stores v. Moitie, 452 U.S. 394, 401 (1981).  Res judicata, or claim preclusion, prevents the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined.  Balderman v. U.S. Veterans Admin., 870 F.2d 57, 62 (2d Cir. 1989).  Under the doctrine of res judicata, a final judgment on the merits in one action "precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  See Computer Associates Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997)(quoting Federated, 452 U.S. at 398, cert. denied, 523 U.S. 1106 (1998)).  Res judicata thus bars the subsequent litigation of any claims arising from the transaction or series of transactions which was the subject of the prior suit.  See id.

66.     In this case, Mr. Lopez sought to vacate the default judgment by arguing that he had meritorious claims or defenses to raise—lack of service, breach of an alleged oral agreement, and challenges to Breakers standing as the holder of the subject loan.  The State Court rejected each of those arguments and he cannot raise them again to challenge Breaker's claim.  Moreover, under the July 17 Stipulation, the Debtor agreed to withdraw its appeal from the Judgment and acknowledged that it has no basis to set the Judgment aside.

67.     In short, while the Debtor may be entitled to information regarding expenses of the Property paid by Breakers or its assignor after entry of the judgment of foreclosure and sale (Debtor's Proposed Document Requests 13 and 14), the Debtor may not

22

challenge in this Court the State Court's calculation of Breakers' claim as set forth in the State Court's judgment of foreclosure sale, or use Rule 2004 to take discovery in furtherance of claims it is already barred from bringing.

68.    Finally, Debtor's Motion includes a request that, if Debtor is unable to obtain the requested discovery via Rule 2004, that such discovery "be performed pursuant to FRBP 7026." Debtor's Motion at ¶ 3. But the Debtor has not identified a pending adversary or contested matter in which it should be entitled to the broad discovery it seeks to obtain through its Motion, let alone any explanation as to why it would be entitled to obtain such sweeping discovery in connection therewith. Accordingly, Debtor's invocation of Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure is unavailing.

## CONCLUSION

For the foregoing reasons, Breakers respectfully requests that the Court grant Breaker's Rule 2004 Motion, and deny the Debtors' Motion to the extent it seeks information beyond expenses incurred for the Property after entry of the Judgment, and that the Court grant Breakers such other and further relief as is just and proper.

Dated:  New York, New York
        October 17, 2012

                                RUBIN LLC

                                By:/s/ Paul A. Rubin
                                     Paul A. Rubin

                                345 Seventh Avenue, 21st Floor
                                New York, New York 10001
                                Tel: 212.390.8054
                                Fax: 212.390.8064
                                prubin@rubinlawllc.com

                                Attorneys for Breakers Capital LLC

23