UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Chapter 11

**SOLERA HOLDINGS L.L.C.,**                                Case No.: 13-20006-rdd

                                    Debtor.
-------------------------------------------------------------x


# PLAN OF LIQUIDATION OF SOLERA HOLDINGS L.L.C.


**ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue
New York, New York 10022
Tel. No.: 212-603-6300

**A. Mitchell Greene, Esq.**

**Dated:** New York, New York
March 3, 2014

{00661731.DOC;6 }

**Solera Holdings, L.L.C.**, the debtor and debtor in possession (the "Debtor"),

proposes the following plan of liquidation (the "Plan") pursuant to sections 1121(a), 1122

and 1123 of title 11 of the United States Code.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following

meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not

defined in this article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules

shall have the meaning set forth therein; (iii) terms stated in the singular shall include the

plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall

include the masculine, the feminine and the neuter; (v) all section, article and exhibit

references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any

reference to a contract, instrument, release or other agreement or document being in a

particular form or on particular terms and conditions, means that such document shall be

substantially in such form or substantially on such terms and conditions except as stated

otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be

filed means such document or exhibit, as it may have been or may be amended, modified or

supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words

of similar import refer to the Plan in its entirety rather than to only a particular portion of the

Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall

govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy

Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such

section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to

the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies

retroactively to cases filed on the Petition Date.

1.1    "**Administrative Bar Date**" means the first Business Day that is 60

days after the Effective Date.

1.2    "**Administrative Claim**" means a Claim for, or request for payment of,

an Administrative Expense (i) as to which no objection to the allowance thereof has been

interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code,

the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been

resolved by a Final Order allowing such claim in whole or in part, to the extent such claim is

Allowed.

1.3    "**Administrative Expense**" means any cost or expense of

administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b),

330 or 331 of the Bankruptcy Code.

1.4    "**Administrative Tax Claim**" means an Administrative Claim for a tax

due to a governmental unit.

1.5   **"Allowed Claim"** means a Claim or any portion thereof against the
Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim
and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the
Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is
listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.6   **"Allowed...Claim"** means an Allowed Claim of the type described.

1.7   **"Allowed Interest"** means an Interest in the Debtor that has not been
disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been
timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is
listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.8   **"Available Cash"** means the sum of cash remaining in the Debtor's
Estate.

1.9   **"Bankruptcy Code"** means title 11 of the United States Code, as
amended from time to time and effective as to cases filed on the Petition Date.

1.10   **"Bankruptcy Court"** means the United States Bankruptcy Court for
the Southern District of New York or the United States District Court for the Southern
District of New York to the extent it withdraws the reference over all or any portion of these
Chapter 11 Cases pursuant to section 157(d) of title 28 of the United States Code.

1.11    **"Bankruptcy Fees"** means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

1.12    **"Bankruptcy Rules"** means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases.

1.13    **"Bar Date"** means the date set by Order of the Bankruptcy Court subsequent to which a Proof of Claim or Proof of Interest is not timely filed.  Pursuant to Bankruptcy Court Order dated November 4, 2013, the Bar Date is December 10, 2013 for filing Proofs of Claim and Proofs of Interest of an entity that is not a governmental unit.

1.14    **"Breakers"** means Breakers Capital, L.L.C., as assignee of BPD Bank, with respect to the Breakers Note, Breakers Secured Claim, and Breakers Security Documents.

1.15    **"Breakers Note"** means, collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto, evidencing a Claim held by Breakers.

1.16    **"Breakers Secured Claim"** means the Secured Claim, if any, against the Debtor, or the Property, on account of the Breakers Note or the Breakers Security Documents.

1.17    **"Breakers Security Documents"** means each and every mortgage, assignment of rents, security agreements, spreader agreement and/or any such other documents granting Breakers a lien on the Property to secure the Breakers Note.

1.18    **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.19    **"Case"** means the case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *In re Solera Holdings L.L.C.*, Case No. 13-20006 (RDD).

1.20    **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.21    **"Causes of Action"** means any and all actions, causes of action, suits accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, secured or unsecured and whether asserted or assertable directly or

derivatively, in law, equity or otherwise

      1.22   **"Claim"** means a "claim," as defined in section 101(5) of the

Bankruptcy Code.

      1.23   **"Class"** means a category of substantially similar Allowed Claims or

Allowed Interests as established pursuant to Article 3 of the Plan.

      1.24   **"Closing"** shall have the meaning ascribed to it in the Contract of Sale.

      1.25   **"Closing Deadline"** means that the Closing of the sale of the Property

shall occur no later than May 31, 2014, which date may be extended by Court order or by an

agreement in writing between Breakers and the Debtor.

      1.26   **"Confirmation"** means the entry of the Confirmation Order on the

docket of the Chapter 11 Case.

      1.27   **"Confirmation Date"** means the date on which the Confirmation Order

is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final

Order.

      1.28   **"Confirmation Order"** means an Order of the Bankruptcy Court

confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance

reasonably satisfactory to the Debtor.

1.29    **"Contract of Sale"** means the contract of sale between the Debtor and the Purchaser, substantially in the form attached hereto as Exhibit A.

1.30    **"Creditor"** means a Holder of an Allowed Claim.

1.31    **"Cure Amount"** means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.32    **"Debtor"** means Solera Holdings L.L.C., a limited liability company with a mailing address at 216 East 53rd Street, New York, New York.

1.33    **"Deficiency Claim"** means as applied separately to each holder of such Claim, unless the Holder thereof elects treatment in accordance with Section 1111(b)(2) of the Bankruptcy Code and Bankruptcy Rule 3014, the portion of an Allowed Claim that exceeds the value of all property in which the Estate has an interest that is subject to a Lien securing such Allowed Claim.

1.34    **"Disbursing Agent"** means Robinson Brog Leinwand Greene Genovese & Gluck P.C.

1.35    **"Disclosure Statement"** means the *Disclosure Statement for the Plan of Liquidation of Solera Holdings L.L.C.,* including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court.

1.36   **"Disputed Claim"** means

(a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed;

(b)   any Claim (including an Administrative Expense Claim), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, or the estimation of such Claim, has been filed with the Bankruptcy Court within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

(c)   Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (x) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

1.37   **"Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan.

1.38   **"Effective Date"** means the first Business Day after which all of the

conditions to the Effective Date, specified in Section 11.1 of this Plan have been satisfied.

1.39   **"Estate"** means the estate of the Debtor created on the Petition Date

pursuant to section 541 of the Bankruptcy Code.

1.40   **"Executory Contract"** means an executory contract within the

meaning of section 365 of the Bankruptcy Code.

1.41   **"Final Order"** means a judgment, order, ruling or other decree of the

Bankruptcy Court (or court of competent jurisdiction) entered by the Clerk on the docket of

the Chapter 11 Case (or on the docket of any court of competent jurisdiction) that has not

been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*

proceeding or move for a new trial, reargument or rehearing has expired and as to which no

appeal, petition for *certiorari* proceeding, or other proceedings for a new trial, reargument or

rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument

or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or

other court of competent jurisdiction) shall have been affirmed by the highest court to which

such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or

rehearing shall have been denied or resulted in no modification of such order, and the time to

take any further appeal, petition for *certiorari* or move for a new trial, reargument or

rehearing shall have expired; *provided, however*, that the possibility that a motion under

661731-4                          {00661731.DOC;6 }10

Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under the Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such order shall not cause such order not to be a Final Order.

     1.42    **"Foreclosure Action"** means the foreclosure proceeding in the Supreme Court for the State of New York, New York County in the action captioned *Breakers Capital LLC v. Solera Holdings, et al.,* Index No. 850046/2012.

     1.43    **"Holder"** means a Person holding a Claim or Interest.

     1.44    **"Interest"** means an equity interest in the Debtor.

     1.45    **"Interest Holder"** means the Holder of an Allowed Interest in the Debtor.

     1.46    **"Leases"** means any lease agreement between the Debtor and its Tenants.

     1.47    **"Legal Holiday"** means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

     1.48    **"Lien"** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

     1.49    **"Other Secured Claims"** means any other Secured Claim against the Property that is not the Breakers Secured Claim.

     1.50    **"Order"** means an order of the Bankruptcy Court.

661731-4                              {00661731.DOC;6 } 11

1.51    **"Person"** means a person as defined in 11 U.S.C. § 101(41).

1.52    **"Petition Date"** means July 23, 2013, the date on which this Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.53    **"Plan"** means this *Plan of Liquidation of Solera Holdings, L.L.C.,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.54    **"Plan Supplement"** means a separate volume to be filed with the Bankruptcy Court as a supplement to this Plan no later than five (5) days prior to the Confirmation Date that shall contain the documents necessary to administer this Plan, including the form of Contract of Sale between the Debtor and the Purchaser.

1.55    **"Priority Non-Tax Claim"** means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Tax Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority in payment under Bankruptcy Code Section 507(a) or (b).

1.56    **"Priority Tax Claim"** means an Allowed Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.57    "**Professional**" means all professionals employed by the Debtor under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in the Chapter 11 Case pursuant to a Final Order.

1.58    "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals prior to the Effective Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.59    "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.60    "**Proof of Interest**" means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.61    "**Property**" means the real property and improvements thereon located at 216 East 53rd Street, New York, New York.

1.62    "**Pro Rata**" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.63    "**Purchase Price**" shall have the meaning ascribed to it in the Contract of Sale.

1.64   **"Purchaser"** means JMVD Realty Partners 8 LLC or an entity designated by it.

1.65   **"Released Parties"** shall have the meaning set forth in section 8.2 of this Plan.

1.66   **"Remaining Proceeds"** means the Cash, if any, after the payment of all Allowed Administrative Claims, Bankruptcy Fees, Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Breaker Secured Claim, and Allowed Unsecured Claims, and all fees and expenses incurred in connection with the administration and implementation of the Plan.

1.67   **"Sale Proceeds"** means the proceeds received by the Debtor on account of the sale of the Property, as approved by the Bankruptcy Court, which sale shall be in accordance with Section 363 of the Bankruptcy Code and which sale shall be free and clear of all Liens, Claims and encumbrances, with any Liens attaching to the proceeds.

1.68   **"Schedules"** mean the schedules of assets and liabilities, any amendments with respect thereto, and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.69   **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is

secured by a Lien on Property in which the Estate has an interest or that is subject to set-off

under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's

interest in the Estate's interest in such Property or to the extent of the amount subject to set-

off, as applicable, as determined by a Final Order pursuant to section 506(a) of the

Bankruptcy Code or as provided for in the Plan

      1.70   **"Solera Corp."** means the Debtor's main tenant, which owns the

restaurant Solera, located on the Property and leases the ground floor, first floor, rear yard

and second floor from the Debtor on a month to month basis.

      1.71   **"Tenants"** means all non-Debtor parties to Leases with the Debtor for

space on the Property.

      1.72   **"Transfer Taxes"** means any and all stamp taxes or similar taxes, if

and as applicable and imposed by a governmental unit with respect to the transfer of a

property or interest therein.

      1.73   **"Unsecured Claim"** means a Claim against the Debtor, including any

Deficiency Claim, that is not an Administrative Claim, an Administrative Tax Claim, a

Bankruptcy Fee, a Priority Tax Claim, a Priority Non-Tax Claim, a Breaker Secured Claim or

an Other Secured Claim.

      1.74   **"Unsecured Creditor"** means the Holder of an Unsecured Claim.

661731-4                    {00661731.DOC;6 }15

1.75   **"Unexpired Lease"** means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

2.1   **Administrative Bar Date**.  Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date.  Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or its Property.

2.2   **Professional Compensation and Reimbursement**. Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than the Administrative Bar Date.  Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order Allowing such Claim.

661731-4                              {00661731.DOC;6 } 16

2.3    **Administrative Claims**. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.4    **Administrative Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by governmental units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such governmental unit on or before the Confirmation Date.

2.5    **Priority Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, each Holder of a Priority Tax Claim shall receive, on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, payment from the Disbursing

Agent, (i) in Cash, in the full amount of its Priority Tax Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor the Holder of such Priority Tax Claim.

2.6     **Bankruptcy Fees.** All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid in full, in Cash, as required by statute until the closing, conversion or dismissal of this Case, whichever is earlier.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

> **Class 1 – Priority Non-Tax Claims.** Class 1 consists of all Priority Non-Tax Claims.

> **Class 2 –Breakers Secured Claim**. Class 2 consists of the Breakers Secured Claim.

> **Class 3 – Other Secured Claims.** Class 3 consists of all Other Secured Claims.

> **Class 4 –Unsecured Claims.** Class 4 consists of consists of all Unsecured Claims, including Deficiency Claims, against the Debtor.

**Class 5 –Interests.** Class 5 consists of all Interests in the Debtor.

### ARTICLE 4

### TREATMENT OF CLAIMS AND INTERESTS

Allowed Claims in Classes 1, 2, 3 and 4 are unimpaired and are not entitled to vote to accept or reject the Plan. The Allowed Interest in Class 5 is impaired and is entitled to vote on the Plan. The members of each Class shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

4.1     **Class 1 – Priority Non-Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to  Disputed Claims, in full satisfaction, release and discharge of the Priority Non-Tax Claims, each Holder of a Priority Non-Tax Claim shall receive, on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Non-Tax Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the Holder of such Priority Non-Tax Claim.

4.2     **Class 2 – Breakers Secured Claim.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Breakers Secured Claim, the Holder of the Breakers Secured Claim shall receive no later than the Closing Deadline (i) Cash in the full amount of the Allowed Breakers Secured Claim from the Sale Proceeds, or (ii) if the sale does not close in accordance with the Contract of Sale or by the

Closing Deadline, the Property, transferred by a quitclaim deed to Breakers in full and complete

satisfaction of its claim and Breakers shall have no further claim (including any Deficiency

Claim), or (iii) such other treatment as to which the Debtor and the Holder of the Breakers

Secured Claim shall have agreed upon in writing.

4.3    **Class 3 –Other Secured Claims.**  Subject to the provisions of Article 7 of

the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of each Other

Secured Claim, each Holder of an Other Secured Claim shall receive, at the Debtor's option, on

the Effective Date, or as soon as practicable after each such Other Secured Claim becomes an

Allowed Claim, (i) Cash, in the full amount of its Claim, (ii) the return of its collateral in full

satisfaction of its Claim, or (iii) such other treatment as to which the Debtor and each Holder of

such Other Secured Claim shall have agreed upon in writing.

4.4    **Class 4 –Unsecured Claims.**  Subject to the provisions of Article 7 of the

Plan with respect to Disputed Claims, in full satisfaction, settlement, release and discharge of the

Class 4 Unsecured Claims, the Holders of the Class 4 Unsecured Claims against the Debtor shall

receive, on the Effective Date, Cash equal to 100% of their Allowed Claim from the Disbursing

Agent.  Rufino Lopez, a Class 5 Interest Holder, and Solera Corp., both Holders of Class 4

Unsecured Claims against the Debtor, are each waiving their distribution as Holders of Class 4

Unsecured Claims under the Plan.  Solera Corp. has agreed that to the extent that the Debtor has

insufficient Cash to pay all the Allowed Class 4 Unsecured Claims in full, then it shall pay such

sums as is necessary on the Effective Date or as otherwise required by the Plan to ensure that all

Holders of Allowed Class 4 Unsecured Claims are paid as provided for in this paragraph.

4.5     **Class 5 - Interests**.  After all payments are made under the Plan, any

excess Cash shall be distributed to the Holders of Interests.  Except for this distribution and the

preservation of Causes of Action, Holders of Interests shall neither receive nor retain any other

property under the Plan.  As set forth in Article 6 of the Plan, all Interests shall be cancelled and

of no further force or effect.

### ARTICLE 5

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     **Assumption and Assignments of Executory Contracts and Unexpired**

**Leases.**  On the Effective Date, except as provided herein, or by a separate motion or in a Plan

Supplement, all Executory Contracts and Unexpired Leases to which Debtor is a party, if any,

shall be deemed assumed and assigned to the Purchaser in accordance with Section 365 of the

Bankruptcy Code.

5.2     **Rejection Claims.**  Allowed Claims arising from the rejection of any

Executory Contract or Unexpired Lease of the Debtor shall be treated as a Class 4 Unsecured

Claim.

5.3     **Bar to Rejection Claims.**  A Proof of Claim with respect to a  Class 4

Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired

Leases shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor no later than 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or its successors or their respective properties.

## Article 6

### Implementation of the Plan

6.1    **Implementation.**  The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  The Purchaser shall be authorized to purchase the Property, under and in accordance with this Plan, which Property is located at 216 East 53rd Street, New York, New York in accordance with the Contract of Sale, substantially in the form attached hereto as Exhibit A.   The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor, the Purchaser and any other necessary party to, among other things, (i) execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property required by the Plan, and (iii) perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

6.2     **Sale of Assets.**  In order to fund the distributions under the Plan, the Debtor shall consummate the closing and sale of the Property to the Purchaser and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146 of the Bankruptcy Code.     Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, at the Confirmation Hearing, the Debtor's Property shall be sold to the Purchaser, free and clear of any and all Liens, Claims, encumbrances, Interests, bills or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in this Plan.

6.2     **Plan Funding**.  The Plan shall be funded by the Debtor's Available Cash on the Effective Date, including all amounts available in the Debtor's Debtor in Possession bank account, the past-due rent paid by Solera Corp. to the Debtor and the Sale Proceeds.  These funds shall be utilized to satisfy payments due on the Effective Date under this Plan.  If the Debtor has insufficient funds to pay all claims in full, Solera Corp. shall pay the shortfall, such that all claims are paid in full on the Effective Date.

6.3     **Transfer Taxes.**

(a) Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including any instrument executed in furtherance of the transactions contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, including any such

taxes due on the sale of the Property as contemplated by the Plan, and to the extent provided by 1146(a), if any, shall not be subject to any state, local of federal law imposing such tax.

(b)  Pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the appropriate recording office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.  The appropriate recording office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

6.4    **Vesting of Assets.**  Except as otherwise provided in the Plan, on the Effective Date, all of the Debtor's assets remaining after the sale of the Property and payment to the Creditors on account of their Claims, including any and all Causes of Action, shall become vested in the Debtor free and clear of all Liens, Claims and encumbrances.   On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

6.5    **Execution of Documents.**

(a) On the Effective Date, the Debtor, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)      Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of Article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.6      **Filing of Documents.**  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.7      **Preservation of Rights of Action.**

(a)      Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain any claims, rights and Causes of Action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of

the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

(b)   Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or Cause of Action, shall be retained by the Debtor following the satisfaction of all other Allowed Claims under the terms of the Plan.

(c)   Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity allowance, or amount of any such claim, document or agreement.  The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

6.8   **Dissolution of Corporate Existence.**  On the Effective Date, the Debtor shall be dissolved and shall have no continuing corporate existence, subject only to the Debtor's Plan imposed obligation to satisfy the Allowed Claims against the Debtor's Estate.  To the extent permitted by law, the dissolution of the Debtor shall not abate or suspend a proceeding commenced by the dissolving Debtor by reason of the dissolution, and the Debtor shall nevertheless be deemed a continued corporate body as necessary for the sole purpose of winding up its affairs, including the prosecution of any proceedings.  Upon the final payment and satisfaction of the last of such Plan imposed obligations, the Debtor (A) shall be dissolved and

withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such dissolution and withdrawal; (B) shall be deemed to have all of its Interests cancelled pursuant to the Plan; and (C) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes that otherwise would have accrued on or after the Effective Date, all without the necessity for any other or further actions to be taken on behalf of such Debtor; provided, however, that the Debtor may, if it so elects, and any officer of the Debtor, shall be an authorized signatory for such purposes, prepare and file all corporate resolutions, statements, notices, tax returns, or certificates of dissolution, prosecute any actions pursuant to the Plan and dispose of and take any other action with respect to the revesting of assets pursuant to the Plan.

      **6.9**    **Cancellation of Breakers Note**. On the Effective Date, the Breakers Note and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtor shall be cancelled and the obligations of, and/or Claims against, the Debtor under, relating or pertaining to any agreements and any other note, bond or indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtor shall be released and discharged.

      **6.10**    **Sale Closing Deadline.**  The sale of the Property and the payment to Breakers in the full amount of its Claim shall occur on or before the Closing Deadline.  The

661731-4                               {00661731.DOC;6 }27

Closing Deadline may be extended by Court order or by an agreement in writing between
Breakers and the Debtor.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1     **Disbursing Agent.**  Debtor's counsel, the law firm of Robinson Brog
Leinwand Greene Genovese & Gluck P.C., shall be the Disbursing Agent and shall distribute all
Cash or other property to be distributed under the Plan and may employ or contract such third
parties as may be necessary to assist in or perform the distribution of Cash or other property
under the Plan.  Pending the final distribution of all sums distributable under the terms of the
Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of
the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of
the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.


7.2     **Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8
of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on
account of any Disputed Claim, shall be deemed to be timely made if made on or within five
days following the later of (i) the expiration of any applicable objection deadline with respect to
such Disputed Claim or (ii) such other times provided in the Plan.

7.3    **Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4    **Claims Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve any objection to any Claim or Interest at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

7.5    **Prosecution of Objections.**  After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claim.  The Debtor may comprise any objections to Disputed Claims without further order of the Court.

7.6    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7    **Escrow of Cash Distributions.** (a)  On any date that distributions are to be made under the terms of the Plan, the Debtor shall make available any and all funds required under Plan to be disbursed on that date, and  the Disbursing Agent shall deposit in one or more segregated accounts, all of the Cash that would be distributed on such date on account of

Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of governmental units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)     The Debtor shall have the right to seek an Order of the Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim. Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Such Creditor shall have recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Debtor.

7.8     **Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.9     **Investment of Segregated Cash.** To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds. Segregated Cash shall be maintained in an authorized depository.

7.10    **Distribution After Disallowance.** Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtor.

7.11    **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)  Notwithstanding any other provision of the Plan, no Creditor that holds a note (including the Breakers Note) or other instrument evidencing such Creditor's Claim

may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim (including but not limited to all documents evidencing the Breakers Secured Claim) shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor.

(b)     Any Cash to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)     In the event any Creditor is unable to surrender a note (including the Breakers Note) or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent: (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(d)     All questions as to the validity, form or eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. The Debtor and the Disbursing Agent shall not be under any duty to give

notification of defects in such tender or shall incur liability for failure to give notification of such defects.

7.12    **Delivery of Distributions.**  Except as provided in sections 7.13, 7.14 and 7.15 of the Plan, distributions to Holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

7.13    **Undeliverable Distributions.**  (a) If the distribution to the Holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b)    Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of

all Cash that has become deliverable during the preceding quarter. Each such distribution shall

include the net return yielded from the investment of any undeliverable Cash, from the date such

distribution would have been due had it then been deliverable to the date that such distribution

becomes deliverable.

(c)    Nothing contained in the Plan shall require the Debtor to attempt to

locate any Holder of an Allowed Claim or an Allowed Interest.

7.14    **Unclaimed Distributions.** Any Cash or other to be distributed under the

Plan shall revert to the Debtor if it is not claimed by the entity entitled thereto before the later of

(i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity

under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that entity

becomes a Final Order, and such entity's claim shall be reduced to zero.

7.15    **Set-offs.** The Disbursing Agent (on behalf of the Debtor) may, but shall

not be required to, set-off against the distributions to be made pursuant to the Plan, the claims,

obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against

the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-

off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor of

any such claims, obligations, rights, Causes of Action and liabilities that the Debtor has or may

have against such Holder. To the extent the Disbursing Agent elects to effectuate a set-off, it

shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating

the set-off. To the extent the Holder of an Allowed Claim objects to the set-off, a written

objection shall be provided to the Debtor and the Disbursing Agent no later than three (3) days prior to the set-off date or the objection shall be waived.

## ARTICLE 8

### INJUNCTION AND EXCULPATION

**8.1    Injunction.  Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold Claims against, or Interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the Estate retained by the Debtor or distributed to Creditors under this Plan.**

**8.2    Limitation of Liability.  Neither the Debtor, nor any of its respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them, if any, (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with these cases or**

661731-4                    {00661731.DOC;6 }35

the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in this Section 8.2 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 8 of the Plan.

       8.3     Release.  Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based

on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code;  any environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1    **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2    **Compliance with Tax Requirements.**  In connection with the Plan, the Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *provided, however,* that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3    **Due Authorization by Creditors.**  Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4    **Amendments.**  The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Debtor shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

　　　　9.5　　**Revocation.**　The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.　If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

　　　　9.6　　**Request for Relief Under Section 1129(b).**　If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

　　　　9.7　　**Filing of Additional Documents.**　Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree.

9.8 **United States Trustee's Fees.** Quarterly fees payable to the Office of the United States Trustee shall be paid by the Debtor until entry of a final decree, dismissal or conversion of this case, whichever is earlier.

9.9 **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.10 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.11 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12 **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Debtor, at Robinson Brog Leinwand Greene Genovese & Gluck, P.C., 875 Third Avenue, 9th floor, New York, New York 10022, Attn: Fred Ringel, Esq.;

(b) if to any Creditor or Interest Holder, at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such Holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or

661731-4                     {00661731.DOC;6 }40

Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address;

        (c)    if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.13 **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

9.14 **Other Actions.** Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.15 **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.16 **Business Day.** In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

9.17 **Dismissal of State Court Litigation with Prejudice.** Within two (2) days of the Allowed Claim of Breaker being paid in full, Breaker shall dismiss with prejudice the litigation against the Debtor and others filed in the Foreclosure Action. In the event that Breakers

661731-4                 {00661731.DOC;6 }41

fails to dismiss with prejudice the Breaker Litigation within two days of its Allowed Claim being

paid in full, the Debtor shall be authorized to file a stipulation dismissing the action with

prejudice and affix Breakers name thereto without further court order or the consent of Breakers.

## ARTICLE 10

### RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation

Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court

shall retain and have original, but not exclusive, jurisdiction to:

(a)    Insure that the Plan is consummated, and to enter any Order

pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest Holders

and any other necessary party, to take such action and execute such documents to effectuate the

Plan;

(b)    Consider any modification of the Plan proposed pursuant to section

1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)    Allow, disallow, determine, liquidate, classify or establish the

priority, secured or unsecured status of any Claim or Interest, including, without limitation, the

resolution of any request for payment of any Administrative Expense, the resolution of any and

all objections to the allowance or priority of Claims or Interests, and the resolution of any

adversary proceeding;

(d)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)     Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of this Plan;

(g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of Article 7 of the Plan;

(i)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(j)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)     Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)     Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)     Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(p)     Enter an Order or Final Decree concluding the Case; and

(q)    Determine any cases involving the Debtor's retained Causes of Action.

10.2    **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

**ARTICLE 11**

**CONDITION TO THE EFFECTIVE DATE**

11.1    **Condition Precedent to Effectiveness.**

11.1.1. *In the Event the Sale Closes.*  If the Property is sold under the Plan, then the Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied or waived in full:

(a)    The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

(b)    The Property has been sold, the Closing has occurred, and Breakers has been paid in full on account of its claim on or before the Closing Deadline.

(c)    The Debtor is in receipt of the Sale Proceeds.

11.1.2. *In the Event the Sale does not Close.* If the Contract of Sale has been terminated or Breakers has not been paid in full by the Closing Deadline (as may be extended by Court order or by written agreement between Breakers and the Debtor), then the Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied or waived in full:

(a)    The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

(b)    The Property has been conveyed by quitclaim deed to Breakers.

### ARTICLE 12

### CLOSING THE CASE

12.1    **Substantial Consummation.** Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its Property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

**12.2    Closing the Case.** Upon the substantial consummation of the Plan, the

Debtor shall expeditiously move for the entry of a final decree closing the Case and such other

relief as may be just and appropriate.

**DATED:**    New York, New York
March 3, 2014

**SOLERA HOLDINGS L.L.C.**

By:    _____
Rufino Lopez, Managing Member

**ROBINSON BROG LEINWAND
  GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Fl.
New York, New York 10022
Tel. No.: 212-603-6300

By:    _____
A. Mitchell Greene

Exhibit A

ORIGINAL

CONTRACT OF SALE--OFFICE, COMMERICAL AND MULTI-FAMILY RESIDENTIAL PREMISES (2000)
This form was originally prepared by the Committee on Real Property of the Association of the Bar of the
City of New York. This form may have been altered by the user and any such alterations may not be
apparent. To view or download the original unaltered text of this form and an introduction to this form, visit
the Real Estate Law page at www.abcny.org.

# Contract of Sale—Office, Commercial and Multi-Family Residential Premises

## between

## SOLERA HOLDINGS L.L.C. ("Seller")

## and

## JMVD REALTY PARTNERS 8 LLC ("Purchaser")

## dated as of February __, 2014

## Premises:

| | |
|---|---|
| Street Address: | 216 East 53rd Street |
| City or Town: | New York, NY |
| County: | New York |
| Block: | 1326 |
| Lot: | 41 |
| State: | New York |

{00659471.DOC;3 }

### Contract of Sale—Office, Commercial and Multi-Family Residential Premises

CONTRACT dated as of February __, 2014 between SOLERA HOLDINGAS L.L.C. ("Seller") and JMVD Realty Partners 8 LLC ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

**Section 1.       Sale of Premises and Acceptable Title**

§1.01.   Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract: (a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, "Building"); (c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway; (d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and (e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). For purposes of this contract, "appurtenances" shall include all right, title and interest of Seller in and to (i) the leases for space in the Building, and all guarantees thereof, as shown on Schedule E attached hereto and any leases entered into by Seller between the date of this contract and the Closing (as hereinafter defined); (ii) the Service Contracts (as hereinafter defined); (iii) plans, specifications, architectural and engineering drawings, prints, surveys, soil and substrata studies relating to the Land and the Building in Seller's possession; (iv) all operating manuals and books, data and records regarding the Land and the Building and its component systems in Seller's possession; (v) all licenses, permits, certificates of occupancy and other approvals issued by any state, federal or local authority relating to the use, maintenance or operation of the Land and the Building to the extent that they may be transferred or assigned; (vi) all warranties or guaranties, if any, applicable to the Building, to the extent such warranties or guaranties are assignable; and (vii) all tradenames, trademarks, servicemarks, logos, copyrights and good will relating to or used in connection with the operation of the Land and the Building. The Premises are located at or known as 216 East 53rd Street, New York, NY, Block 1326, Lot 46.

§1.02.   Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to: (a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and (b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any title insurer licensed to do business by the State of New York) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

{00659471.DOC;3 }

**Section 2.**        **Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage, Escrow of Downpayment and Foreign Persons**

§2.01.    The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $5,700,000.00.

§2.02.    All monies payable under this contract, unless otherwise specified in this contract, shall be paid by (a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank or trust company having a banking office in the City of New York and which is a member of the New York Clearing House Association or (b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of $1,000.00 shall be acceptable for sums payable to Seller at the Closing, or (c) with respect to the portion of the Purchase Price payable at the Closing, at Seller's election, by wire transfer of immediately available federal funds to an account designated by Seller not less than three business days prior to the Closing.

§2.03.    Intentionally Omitted.

§2.04.    Intentionally Omitted.

§2.05.    (a)    If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand.   If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b)   The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c)   Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

(d)   If Escrowee is Seller's attorney, Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(e)   Escrowee may act or refrain from acting in respect of any matter referred to in this §2.05 in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

§2.06.   In the event that Seller is a "foreign person", as defined in Internal Revenue Code Section 1445 and regulations issued thereunder (collectively, the "Code Withholding Section"), or in the event that Seller fails to deliver the certification of non-foreign status required under §10.12(c), or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certification, Purchaser shall deduct and withhold from the Purchase Price a sum equal to ten percent (10%) thereof and shall at Closing remit the withheld amount with Forms 8288 and 8288A or any successors thereto) to the Internal Revenue Service; and if the cash balance of the Purchase Price payable to Seller at the Closing after deduction of net adjustments, apportionments and credits (if any) to be made or allowed in favor of Seller at the Closing as herein provided is less than ten percent (10%) of the Purchase Price, Purchaser shall have the right to terminate this contract, in which event Seller shall refund the Downpayment to Purchaser and shall reimburse Purchaser for title examination and survey costs as if this contract were terminated pursuant to §13.02. The right of termination provided for in this §2.06 shall be in addition to and not in limitation of any other rights or remedies available to Purchaser under applicable law.

## Section 3.    The Closing

§3.01.   Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

**Section 4.**       **Representations and Warranties of Seller**

Seller represents and warrants to Purchaser as follows:

§4.01.    Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02.    Intentionally Omitted.

§4.03.    The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies.

§4.04.    Intentionally Omitted.

§4.05.    Intentionally Omitted.

§4.06.    If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof..

§4.07.    Intentionally Omitted.

§4.08.    If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09.    Intentionally Omitted.

§4.10.    Intentionally Omitted.

§4.11.    Intentionally Omitted.

§4.12.    Intentionally Omitted.

§4.13.    Intentionally Omitted.

§4.14.    Seller is not a "foreign person" as defined in the Code Withholding Section.

§4.15.    Seller is a New York limited liability company that has been duly organized and is validly and presently existing in good standing under the laws of the state of its formation.

§4.16.    Seller has taken all necessary action to authorize the execution, delivery and performance of this contract and has the power and authority to execute, deliver and perform this

contract and consummate the transaction contemplated hereby. Assuming due authorization, execution and delivery by each other party hereto, this contract and all obligations of Seller hereunder are the legal, valid and binding obligations of Seller, enforceable in accordance with the terms of this contract, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

§4.17.    Intentionally Omitted.

§4.18.    Intentionally Omitted.

## Section 5.       Acknowledgments, Representations and Warranties of Purchaser

Purchaser acknowledges that:

§5.01.    Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02.    Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

Purchaser represents and warrants to Seller that:

§5.03.    The funds comprising the Purchase Price to be delivered to Seller in accordance with this contract are not derived from any illegal activity.

§5.04.    Purchaser has taken all necessary action to authorize the execution, delivery and performance of this contract and has the power and authority to execute, deliver and perform this contract and the transaction contemplated hereby. Assuming due authorization, execution and delivery by each other party hereto, this contract and all obligations of Purchaser hereunder are the legal, valid and binding obligations of Purchaser, enforceable in accordance with the terms of this contract, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

§5.05.   The execution and delivery of this contract and the performance of its obligations hereunder by Purchaser will not conflict with any provision of any law or regulation to which Purchaser is subject or any agreement or instrument to which Purchaser is a party or by which it is bound or any order or decree applicable to Purchaser or result in the creation or imposition of any lien on any of Purchaser's assets or property which would materially and adversely affect the ability of Purchaser to carry out the terms of this contract.  Purchaser has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery or performance by Purchaser of this contract.

## Section 6.      Seller's Obligations as to Leases

§6.01.   Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:  (a) amend, renew or extend any Lease in any respect, unless required by law; (b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or (c) terminate any lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02.   Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with (a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and (b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof.  If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date.  If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date.  Such payment shall be made by Purchaser to Seller at the Closing.  In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03.   If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy.  Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent.

§6.04.    Seller does not warrant that any particular Lease or Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchase Price or give rise to any other claim on the part of Purchaser.

§6.05.    Intentionally Omitted.

§6.06.    At the closing the Purchaser, as Landlord, and the Solera Corp., as Tenant, shall enter into a lease for the basement, ground floor (including the rear yard) and second floor presently occupied by Solera Corp and to be used as a restaurant *provided that Solera Corp has satisfied the conditions set forth in section 6.07 of this contract.* The lease shall provide such terms and conditions as shall be agreed to by the parties. The lease shall contain the following minimum terms: (i) the term shall be for ten (10) years with one option to renew for an additional five (5) years, (ii) the tenant shall pay a security deposit of $45,000 payable on the date the lease commences, (iii) the rent shall be $22,500 per month for the first year, $23,500 for the second year, $24,500 for the third year and increase by three (3) percent per year for years 4-10 (or 4-15 if the tenant exercises the option in accordance with the lease terms) with year 3's rent constituting the base rent year and (iv) the lease shall be a triple-net lease with tenant paying all real estate taxes, common area utilities and water and sewer charges for the Land and Building. The lease commencement date shall be be the first day of the first calendar month after the bankruptcy Court confirms the Plan of Reorganization for Seller.

§6.07 The Purchaser's obligation to deliver the lease described in section 6.06 of this Agreement at Closing shall be subject to Solera Corp. having first satisfied each of the following conditions prior to Closing:

(a)    Solera Corp. shall have deposited $20,000 by January 31, 2014 into an interest bearing escrow account (the "Escrow Account") to be held by Robinson Brog Leinwand Greene Genovese & Gluck P.C. in the name of Seller, with time being of the essence with respect to such payment;

(b)    Solera Corp shall deposit into the Escrow Account, commencing on February 10, 2014 and monthly thereafter on the 10th the each month, the sum of $20,000 representing use and occupancy charges for use of the space at the Premises with time being of the essence with respect to each and every such payment;

(c)    At least five business days prior to the hearing on confirmation of Seller's plan or reorganization, Solera Corp shall deposit $250,000 into the Escrow Account (less payments made under sections 6.07(a) and (b) of this Agreement), with time being of the essence with respect to this payment.

(d)    Upon execution of this Agreement of Sale, Solera Corp shall execute a stipulation providing for the immediate issuance and enforcement of a warrant of eviction for the immediate termination of Solera Corp's right to use and occupy its leased premises consisting of the basement, ground floor (including the rear yard) and second floor of the Premises and for

Purchaser to recover immediate possession of such premises. Such stipulation shall also provide that Solera Corp shall deliver vacant possession of the premises to Purchaser five (5) business days prior to the hearing on confirmation of Seller's plan of reorganization.

(e)   The Escrow Account shall be held by counsel to the Seller to be used to fund Seller's proposed plan or reorganization, or subject to further order of the Court.

(f)   Solera Corp. shall have executed an agreement to pay the priority and unsecured allowed claims allowed against the estate of Seller by the Bankruptcy Court in accordance with the distributive provisions set forth in Seller's confirmed plan of reorganization.

(g)   In the event Solera Corp. defaults with respect to any of its obligations under this section 6.07 then (i) Purchaser shall have no obligation to provide Solera Corp with the lease described in section 6.06 of this Agreement; (ii) Purchaser shall be entitled to immediate enforcement of the warrant of eviction described in section 6.07(d) of this Agreement and to recover vacant possession in accordance with such section and (iii) Solera Corp agrees that it shall not remove any property affixed to the real property (the "Fixtures") from the premises utilized by Solera Corp. at any time.


## Section 7.      Responsibility for Violations

§7.01.   Purchaser shall take title subject to all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to or after the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and to all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York.

§7.02.   Intentionally Omitted.

§7.03.   Regardless of whether a violation has been noted or issued prior to the date of this contract, Purchaser shall take title subject to any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy shall not be an objection to title. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price.

§7.04.   If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

## Section 8.      Destruction, Damage or Condemnation

§8.01.   The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

**Section 9.        Covenants of Seller**

Seller covenants that between the date of this contract and the Closing:

§9.01.    Intentionally Omitted.

§9.02.    Seller shall not modify or amend any Service Contract or enter into any new service contract unless the same is terminable without penalty by the then owner of the Premises upon not more than 30 days' notice.

§9.03.    If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04.    No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05.    Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld.  Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06.    Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

**Section 10.        Seller's Closing Obligations**

At the Closing, Seller shall deliver the following to Purchaser:

§10.01.  A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02.  All leases in Seller's possession and the lease for the restaurant to be entered into at Closing by Solera Corp., as Tenant, and Purchaser, as Landlord.

§10.03.  A schedule of all security deposits and a check or credit to Purchaser in the amount of any cash security deposits, including any interest thereon, held by Seller on the Closing Date or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any security deposits which are other than cash.

§10.04.  A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05.  All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06.  Intentionally Omitted.

§10.07.  Intentionally Omitted.

§10.08.  Intentionally Omitted.

§10.09.  All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10.  To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.11.  Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12.  (a)  Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof, and (b) a certification of non-foreign status, in form required by the Code Withholding Section, signed under penalty of perjury.  Seller understands that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

§10.13.  Intentionally Omitted.

§10.14.  An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15.  Intentionally Omitted.

§10.16.  Intentionally Omitted.

§10.17.  Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18.  Intentionally Omitted.

§10.19.  Intentionally Omitted.

§10.20.  Intentionally Omitted.

§10.21.  Any other documents required by this contract to be delivered by Seller.

**Section 11.    Purchaser's Closing Obligations**

At the Closing, Purchaser shall:

§11.01.  Deliver to Seller checks or wire transfer of immediately available federal funds to Seller, in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02.  Intentionally Omitted.

§11.03.  Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04.  Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05.  Deliver to Seller an agreement assuming all of landlord's obligations under the Leases from and after the Closing Date and indemnifying and agreeing to defend Seller against any claims made by tenants with respect to any failure to perform such obligations.

§11.06.  Deliver to Seller a certificate confirming that the warranties and representations of Purchaser set forth in this contract are true and complete as of the Closing Date.

§11.07.  Deliver any other documents required by this contract to be delivered by Purchaser.

§11.08.  Subject to the provisions of section 6.07 hereof, execute and deliver the lease between Purchaser, as Landlord, and Solera Corp., as tenant, for the restaurant at the Premises.

**Section 12.    Apportionments**

§12.01.  The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:

(a)    prepaid rents and Additional Rents (as defined in §12.03) and revenues, if any, from telephone booths, vending machines and other income-producing agreements;

(b)    intentionally omitted;

(c)    real estate taxes, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premise, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;

(d)    intentionally omitted;

(e)    value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;

(f)    charges under transferable Service Contracts or permitted renewals or replacements thereof;

(g)    permitted administrative charges, if any, on tenants' security deposits;

(h)    intentionally omitted;

(i)    insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

(j)    Reletting Expenses under §6.02, if any; and

(k)    any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02.  If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority: (a) first to the month preceding the month in which the Closing occurred; (b) then to the month in which the Closing occurred (c) then to any month or months following the month in which the Closing occurred; and (d) then to the period prior to the month preceding the month in which the Closing occurred.  If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03.  If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.  If any tenant is or becomes entitled to a refund of overpayments of Additional Rent which are attributable in whole or in part to any period prior to the Closing, Seller shall pay to Purchaser an amount equal to the amount of such refund attributable to any such period within ten days after notice from Purchaser, which obligation shall survive the Closing.

**Section 13.**     **Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien**

§13.01.  Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt.  Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02.  If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller.  If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Downpayment to Purchaser.  Upon such refund, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14.  Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages or other liens on the Premises which can be satisfied or discharged by payment of a sum certain, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03.  Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record.  Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02.  If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right, in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure.  In such case the charges, liens and encumbrances with respect to

which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04.  If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05.  Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

**Section 14.**      **Broker**

§14.01.  If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D.  The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D.  If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and .Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction.  Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph.  The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

**Section 15.**      **Notices**

§15.01.  All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, or by prepaid overnight courier with receipt acknowledged, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.  The attorneys for the Seller and Purchaser shall be authorized to give and receive notices on behalf of the parties.  Notices shall be deemed given three (3) business days after the date mailed or the next business day after delivery by overnight courier.

**Section 16.**      **Limitations on Survival of Representations, Warranties, Covenants and other Obligations**

§16.01.  Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action based thereon shall be commenced after the Closing.

§16.02.  The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be

performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

**Section 17.      Intentionally Omitted.**

**Section 18.      Miscellaneous Provisions**

§18.01.  This Contract may not be assigned by Purchaser without the prior written consent of the Seller.

§18.02.  This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§18.03.  This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§18.04.  The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§18.05.  This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§18.06.  This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§18.07.  As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§18.08.  If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

§18.09.  This Contract is to be deemed to have been prepared jointly by the parties hereto, and any uncertainties, or ambiguity existing herein shall not be interpretated against either party, but according to the application of rules of interpretation of contracts, if such uncertainty or ambiguity exists.

§18.10.  The parties each agree that neither this Contract nor any memorandum or notice thereof shall be recorded or tendered for recording in any recording office or clerk's office in which the Property is located, or in any other land record office related to the Property.

Purchaser further agrees that if this Contract or any memorandum or short form thereof shall be recorded in any such office by Purchaser, it shall be a material default of Purchaser hereunder and, upon three (3) days notice to Purchaser, Seller may terminate this Contract and such notice, if recorded, shall be deemed sufficient and adequate notice to third parties that this Contract is in no further force and effect.

§18.11.  In the event that Purchaser for any reason files a Notice of Pendency or any memorandum of this Contract, which is hereby acknowledged by Purchaser to be a cloud on Seller's title, it shall be a material default hereunder, unless there is at such time an uncured event of default by Seller for which Purchaser had given Seller written notice, and among other things, Purchaser shall be liable to Seller for all of Seller's costs and expenses associated with removing such cloud on Seller's title, including, but not limited to, attorney's fees; provided, however, that in no event shall Purchaser be so liable if a final court of competent jurisdiction sustains any of Purchaser's underlying substantive claims against Seller.

§18.12.  Purchaser acknowledges that Purchaser has inspected or shall inspect all aspects of the Property and agrees to take the Premises "as is" as set forth in §5 hereof.  Seller is not liable nor bound in any manner by express or implied warranties, guarantees, promises, statements, representations or information pertaining to the Premises as to the physical condition, environmental conditions, income, expense, operation or to what use the Premises can be applied, including, but not limited to, any matter or thing affecting or relating to the Premises or any personality or fixtures located thereon or appurtenant thereto, except as specifically set forth in this Contract.  Seller is not responsible or in any manner obligated for or by any verbal or written statements, representations, real estate broker's "set-ups" or information pertaining to the Premises furnished by any real estate broker or agent, their employees or any other third person.  Supplementing the foregoing, Purchaser agrees to accept possession of the Premises in its "AS IS" physical condition and "WITH ALL FAULTS " as of the date hereof.  Except as expressly set forth in this Agreement, Seller makes no representation or warranty of any kind or nature whatsoever with respect to the suitability of the Premises for Purchaser's intended use or any other representation of warranty concerning the Premises, including, but not limited to, environmental matters.  Except as expressly set forth in this Contract, Purchaser agrees to assume any and all liabilities in connection with the current physical condition of the Premises and with any hazardous, dangerous or toxic conditions or substances located or to be found on the Premises or any violation of any Federal, state, city, county, town or municipal laws, statutes, ordinances, rules and regulations relating to toxic wastes or asbestos containing materials or any other hazardous or dangerous substances of any kind or nature whatsoever.  Upon Closing Purchaser agrees to assume all of the responsibilities imposed by all health, safety, zoning, building and environmental laws, statutes, ordinances, rules and regulations of any Federal, state, county, city, town, municipal or governmental authority having jurisdiction with respect to the Premises.  The provisions of this Section shall survive the delivery of the Deed.

§18.13.  Purchaser represents and warrants that as of the date hereof and as of the Closing Date, the following statements are and shall be true, correct and complete without material misrepresentation or omission: (i) such party is not a Prohibited Person (as defined below), (ii) such party is in compliance with the Anti-Terrorism Laws (as defined below), (iii) such party does not conduct any business or engage in any transaction or dealing with any Prohibited Person, or deal in, or otherwise engage in any transaction relating to, any property or

interests in property blocked pursuant to Executive Order 13224 (as defined below), and (iv) such party has established policies and procedures designed to prevent and detect money laundering, including processes to meet all applicable anti-money laundering requirements of the USA Patriot Act (as defined below). For purposes of the foregoing representations and warranties: (i) "Anti-Terrorism Laws" are any laws related to terrorism or money laundering, including Executive Order 13224 and the USA Patriot Act, and any regulations promulgated under either of them, (ii) "Executive Order 13224" is defined as Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001, (iii) "Prohibited Person" is defined as (a) a person or entity subject to the provisions of Executive Order 13224; (b) a person or entity owned or controlled by, or acting for or on behalf of, an entity that is subject to the provisions of Executive Order 13224; (c) a person or entity with whom Purchaser or Seller is prohibited from dealing by any of the Anti-Terrorism Laws; (d) a person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order 13224; (e) a person or entity that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department's Office of Foreign Assets Control; or (f) a person or entity who is affiliated with a person or entity described in clauses (a) through (e) immediately above, and (g) "USA Patriot Act" is defined as the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56, as may be amended from time to time.

## Section 19.       Bankruptcy Proceeding

The Seller has filed for protection under Chapter 11 of the U.S. Bankruptcy Code in the Bankruptcy Court for the Southern District of New York, Case No. 13-20006 (RDD). This Contract is subject to and contingent upon the Bankruptcy Court confirmation pursuant to 11 U.S.C § 1129 of a Plan of Reorganization of Seller, which plan shall including a provision approving of and incorporating the sale of the Premises pursuant to this Contract of sale. The Plan shall include a provision that this sale is a transfer pursuant to and in contemplation of the Seller's Chapter 11 Plan of Reorganization and, accordingly, subject to confirmation of the Plan of Reorganization shall not be taxed and/or shall not be subject to any tax under any federal, state, local, municipal or other law imposing a transfer or stamp tax, mortgage tax, or any other law imposing or claiming to impose a transfer or stamp tax, mortgage tax, or any other similar tax in connection with this sale pursuant to §1146(a) of the Bankruptcy Code. This Contract is also subject and contingent upon, and the Closing shall be conditioned on, the entry of the Sale Order, hereinafter defined, and the incorporation of the Sale Order under the Seller's Plan of Reorganization. "Sale Order" means an order of the Bankruptcy court pursuant to sections 105, 363(b) and 363(f) and 365 of the Bankruptcy Code which order authorizes and approves, _inter alia_, the sale of the Premises to the Purchaser on the terms and conditions set forth herein, free and clear of all liens claims and encumbrances pursuant to 11 U.S.C. §363(f), except as otherwise set forth herein, and the assumption by the Purchaser, and assignment by Seller, of the assigned contracts, if any, and containing a finding that Purchaser has acted in "good faith" within the meaning of section 363 (m) of the Bankruptcy Code. The Sale Order and the Confirmation Order, including the exhibits thereto, and as the same may be amended, modified supplemented from time to time, shall be in the form and substance acceptable to Purchaser. If said bankruptcy proceeding or approval of a Plan of Reorganization and issuance of the Sale

Order is not obtained, then this Contract shall be terminated, shall be of no further force or effect, the deposit on contract shall be returned to Purchaser, and neither party shall have any further obligation or liability to the other.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the date first above written.

Seller:

SOLERA HOLDINGS L.L.C.

By: _____
Name: Ruffino Lopez
Its:     Managing Member

Purchaser:
JMVD REALTY PARTNERS 8 LLC

By: _____
Name:
Its:

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of $250,000.00, by check subject to collection, to be held in escrow pursuant to §2.05.

~~$250,000.00~~ $125,000 RUL

Robinson Brog Leinwand Greene Genovese & Gluck P.C.

By: _____

**Schedule A**

**DESCRIPTION OF PREMISES**

(to be attached separately and to include tax map designation)

**Schedule B**

**PERMITTED EXCEPTIONS**

1.      Zoning regulations and ordinances.

2.      Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3.      Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

4.      Unpaid installments of assessments not due and payable on or before the Closing Date.

5.      Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

6.      (a)      Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

         (b)      Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

         (c)      Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

         (d)      Any state of facts that an accurate survey would disclose.

         (e)      The present physical condition of the Premises.

         (f)      Variations between record lines of the Premises and fences, retaining walls and the like.

         (g)      Variations between tax lot and record descriptions.

         (y)      Covenants, restrictions, declarations, reservations, rights, agreements, conditions, consents and easements of record, including but not limited to Agreement of Easement and Restrictive Covenant recorded as Reel 2384, Pg. 1154.

{00659471.DOC;3 }

7.    All present and future building and environmental rules, regulations and advances and any amendments thereto, adopted by any governmental authority now or hereafter having or acquiring jurisdiction.

**Schedule C**

**PURCHASE PRICE**

The Purchase Price shall be paid as follows:

| | | |
|---|---|---|
| (a) | By check subject to collection, the receipt of which is hereby acknowledged by Seller: | $125,000.00 |
| (b) | By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02: | $5,575,000.00 |
| | | ———————— |
| **Purchase Price** | | $5,700,000.00 |

**Schedule D**

**MISCELLANEOUS**

1.   Title insurer designed by the parties (§1.02):

2.   Seller's tax identification number (§2.05):

4.   Purchaser's tax identification number (§2.05):

5.   Scheduled time and date of Closing (§3.01): within 10 calendar days from the date of the Bankruptcy Court Order confirming the Seller's (as Debtor) plan of reorganization.

6.   Place of Closing (§3.01): Offices of Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Floor, New York, New York 10022.

7.   Maximum Expense of Seller to cure title defects, etc. (§13.02): $1,000.00

8.   Broker, if any (§14.01):  None

9.   Party to pay broker's commission (§14.01): N/A

10.   Address for notices (§15.01):

If to Seller: 216 East 53rd Street
New York, New York


with a copy to Seller's attorney:

A.  Mitchell Greene
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, New York 100122
Tel. No. (212) 603-0485
Fax No. (212) 956-2164


If to Purchaser:

JMVD Realty Partners 8 LLC
c/o Kedis Enterprises LLC
1414 Hillside Ave
New Hyde Park NY 11040

{00659471.DOC;3 }

with a copy to Purchaser's attorney:

Laura G. Alcott
Dorf & Nelson
International Corporate Center
555 Theodore Fremd Avenue
Rye, New York 10580

**Schedule E**

**RENT SCHEDULE**

(1)    Japanese Executive Club - $4,000 per month.