UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                              Chapter 11

**SOLERA HOLDINGS L.L.C.,**                         Case No. 13-20006 (RDD)

                              Debtor.
--------------------------------------------------------X


## AMENDED DISCLOSURE STATEMENT FOR AMENDED PLAN OF LIQUIDATION OF SOLERA HOLDINGS L.L.C.


**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN FOR SOLERA HOLDINGS L.L.C.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.**


**ROBINSON BROG LEINWAND
  GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Fl.
New York, New York 10022
Tel. No.: 212-603-6300

**A. Mitchell Greene, Esq.**

**Dated:**  New York, New York
            April 10, 2014

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

THE DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE TRANSMISSION OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. AFTER THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL BE MATERIALLY ACCURATE, AND (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF EQUITY INTERESTS IN THE DEBTORS WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AS A STIPULATION OR AS A WAIVER, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE LIQUIDATION OR THE PLAN ON HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE

DEBTOR.

## SUMMARY

A glossary of defined terms frequently used in this disclosure statement is set forth in Article 1 of the plan of liquidation filed with the Bankruptcy Court.

The Debtor, **Solera Holdings L.L.C.** (the "**Debtor**"), has filed its *Amended Plan of Liquidation for Solera Holdings, L.L.C.* dated April 10, 2014 (the "**Plan**"), with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). This *Amended Disclosure Statement for Amended Plan of Liquidation of Solera Holdings L.L.C.* (the "**Disclosure Statement**") has been approved by the Bankruptcy Court for use in connection with the solicitation of acceptances of the Plan from holders of Interests in the Debtor pursuant to section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**").

In the Debtor's opinion, the treatment of Claims and Interests under the Plan provides a greater recovery for Creditors and Interest Holders than that which is likely to be achieved under other alternatives for the reorganization or liquidation of the Debtor.

**Accordingly, the Debtor believes that Confirmation of the Plan is in the best interests of Interest Holders, and recommends that you vote to accept the Plan.**

### THE DEBTOR

The Debtor owns the real property and improvements thereon located at 216 East 53rd Street, New York, New York, consisting of a four-story plus cellar, walk-up commercial building (the "Property"). The Property is the subject of a foreclosure proceeding in the Supreme Court for the State of New York, New York County (the "**State Court**") in the action captioned *Breakers Capital LLC v. Solera Holdings, et al.,* Index No. 850046/2012 (the "**Foreclosure Action**"). A judgment of foreclosure was entered prior to the commencement of this case, but the Debtor filed the Chapter 11 petition before a foreclosure sale took place.

### THE PLAN

The Plan provides for selling the Property to JMVD Realty Partners 8 LLC or an entity designated by it (the "**Purchaser**")[1] pursuant to the terms in the Contract of Sale, substantially in the form attached as Exhibit A to the Plan, and using the proceeds from the sale of the Property (the "**Sale Proceeds**") to pay the Allowed Breakers Secured Claim in

---

1 The Purchaser is managed by Sam Chand who is related to Vinod Chand, a 49% equity security holder in the Debtor.

full in Cash no later than June 2, 2014 (the "**Closing Deadline**").    In the event that the Contract of Sale has been terminated or Breakers has not been paid in full by the Closing Deadline, then the Property will be conveyed to Breakers by quitclaim deed in full satisfaction of its Claim.  The Plan also provides for (i) paying the Holders of Allowed Class 3 Other Secured Claims the full amount of their Claim or returning their collateral to them, and (ii) paying the Allowed Class 4 Unsecured Claims the full amount of their Claims in Cash.  In the event there are insufficient Sale Proceeds and available cash to pay the Holders of the Claims (other than Secured Claims) in full, then Solera Corp., an entity with some common ownership and the present tenant at the Property, has agreed to pay such sums as is necessary to ensure that all Holders of Allowed Class 4 Unsecured Claims are paid in full.  After all distributions are made under the Plan, any remaining assets will be distributed to the Holders of the Class 5 Interests.  Holders of Class 5 interests are impaired.  Their interests will be extinguished and they will receive no distribution other than any possible excess Sale Proceeds after payment of all other Allowed Claims.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan.  The figures set forth in the table below represent the Debtor's best estimate of the aggregate amount of Claims in the Case.  These estimates are based on an analysis of the Schedules filed by the Debtor, the Proofs of Claims filed by Creditors, and certain other documents of public record.  There can be no assurance that Claims will be allowed by the Bankruptcy Court in the amounts set forth below.  The aggregate amount of Allowed Claims may be significantly lowered from the amounts set forth below as the result of objections to claims which may be brought by the Debtor or through stipulations which may be negotiated with various creditors.

| Class and Estimated Amount | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| $0.00 | Administrative Claims (excluding Claims for professional compensation and reimbursement and Administrative Tax Claims, but including post-petition ordinary course liabilities) | **Non-Voting.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the (x) Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three Business Days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such |

| Class and Estimated Amount | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | Administrative Claim and any agreements relating thereto. |
| $ 0.00 | Administrative Tax Claims | Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by governmental units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such governmental unit on or before the Confirmation Date. |
| Approximately $213,440 as of April 10, 2014 (consisting of fees of approximately $210,640 and expenses of approximately $2,800), less retainer/filing of $20,000 for net obligation due of approximately $193,440 | Administrative Claims for Professional Compensation and Reimbursement[2] | **Non-Voting.**  No later than three days prior to the Confirmation Date, each Professional shall provide the Debtor with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any application for final compensation. On the Effective Date, the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full unless otherwise agreed to by the Debtor and such Professionals; *provided, however,* that the failure of a Professional to provide such an estimate shall relieve the Debtor of its obligation to segregate funds for the payment therefore, but shall not relieve the Debtor of the obligation with respect to any allowed compensation and expense reimbursement.  All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than the Administrative Bar Date.  Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, and upon the Debtor in accordance with the Bankruptcy Rules.  Any such objection not timely filed and served shall be deemed to |

---

[2] Any agreement with respect to the waiver and/or modification of fees will be disclosed to the Court and the Office of the United States Trustee.

| Class and Estimated Amount | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | have been waived. Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order allowing such Claim. |
| $0.00 | Priority Tax Claims | **Non-Voting.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, each Holder of a Priority Tax Claim shall receive, on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Tax Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor the Holder of such Priority Tax Claim. |
| Class 1 $2,700 | Priority Non-Tax Claims | **Unimpaired.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Non-Tax Claims, each Holder of a Priority Non-Tax Claim shall receive, on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, payment from the Disbursing Agent, (i) in Cash in the full amount of its Priority Non-Tax Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Priority Non-Tax Claim. |
| Class 2 $5,455,000 | Allowed Breakers Secured Claim | **Unimpaired.** Breakers is recognized as the holder of a judgment issued by the Justice Carol E. Huff of the Supreme Court of the State of New York for the County of New York (the "**State Court**") in the action captioned <u>Breakers Capital LLC v. Solera Holdings L.L.C., et al.,</u> Index No. 850046/2012 awarding judgment in favor of Breakers against Solera Holdings L.L.C. and others in the amount of $4,718,891.22 plus interest thereon (the "**Judgment**"), which Judgment together with a Bill of Costs was entered by the Clerk of the State Court on July 12, 2013. The Judgment is valid and enforceable and Debtor has no defenses thereto<br><br>The Holder of the Allowed Breakers Secured Claim will receive via wire transfer, no later than the Closing Deadline, Cash in the Compromised Claim Amount (as defined below) from the Sale Proceeds in full satisfaction of the Allowed Breakers Secured Claim, |

| Class and Estimated Amount | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | with TIME BEING OF THE ESSENCE. If, however, the sale of the Property to Purchaser does not close on or before the Closing Deadline and Breakers is not paid the Compromised Claim Amount on or before the Closing Deadline, then Breakers may proceed immediately, without further order of the Bankruptcy Court, to conduct and consummate a foreclosure sale of the Property in connection with the Foreclosure Action, which sale shall be deemed to constitute a transfer of the Property pursuant to the Plan for purposes of Section 1146(c) of the Bankruptcy Code.<br><br>If the sale of the Property to Purchaser does not close on or before the Closing Deadline and Breakers seeks to conduct a foreclosure sale of the Property, then Debtor, Solera Corp. and their common principal, Rufino Lopez will be deemed to have consented to the foreclosure sale and to have waived any and all rights to contest or challenge it in any court for any reason. If Breakers conducts a foreclosure sale of the Property, Solera Corp. will remain liable for any unpaid amounts that it did not pay the Debtor with respect to the period preceding the filing of the Case (including amounts for rent, use and occupancy and unpaid real estate taxes) and Solera Corp. will be deemed to have irrevocably consented to the entry of a judgment of possession and immediate issuance and execution of a warrant of eviction in favor of the successful purchaser at the foreclosure sale (or its designee) to recover possession from it and Solera Corp. will be deemed to have waived any right to seek a stay of the judgment of possession or warrant of eviction or to appeal from the issuance of either, or to otherwise continue to occupy any space in the Property.<br><br>The Allowed Breakers Secured Claim will be allowed in the amount of $5,455,000 as of June 2, 2014 (with interest accruing in the amount of $946.18 per diem thereafter) (the "**Compromised Claim Amount**"), provided, however, that if Debtor does not pay Breakers the Compromised Claim Amount on or before the Closing Deadline (other than due to a *sua sponte* adjournment by the Court of the confirmation hearing date due to its scheduling needs), then the amount of |

| Class and Estimated Amount | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | Breakers' allowed secured claim in this case as of June 2, 2014 will be $5,553,251.95 (with interest accruing in the amount of $946.18 per diem thereafter). |
| Class 3 Estimated to be no more than $225,335.81[3] | Other Secured Claims | **Unimpaired.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of each Other Secured Claim, each Holder of an Other Secured Claim shall receive, at the Debtor's option, on the Effective Date, or as soon as practicable after each such Other Secured Claim becomes an Allowed Claim, (i) Cash, in the full amount of its Claim, (ii) the return of its collateral in full satisfaction of its Claim, or (iii) such other treatment as to which the Debtor and each Holder of such Other Secured Claim shall have agreed upon in writing. |
| Class 4 $231,399.87 in scheduled/filed claims.[4] | Unsecured Claims | **Unimpaired.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, settlement, release and discharge of the Class 4 Unsecured Claims, the Holders of the Class 4 Unsecured Claims against the Debtor shall receive, on the Effective Date, Cash equal to 100% of their Allowed Claim from the Disbursing Agent. Rufino Lopez, a Class 5 Interest Holder, and Solera Corp., both Holders of Class 4 Unsecured Claims against the Debtor, are each deemed to have irrevocably waived and released their claims against the Debtor under the Plan. Solera Corp. has agreed that to the extent that the Debtor has insufficient Cash to pay all the Allowed Class 4 Unsecured Claims in full, then it shall pay such sums as is necessary on the Effective Date or as otherwise required by the Plan to ensure that all Holders of Allowed Class 4 Unsecured Claims are paid as provided for under the Plan. |
| Class 5 | Allowed Interests | **Impaired.** After all payments are made under the Plan, |

[3] The Debtor's Schedules reflect a claim owed to the NYC Department of Finance in the amount of $100,703.48. A claim was also filed by the NYC Department of Finance in the mount of $105,376.43. The Debtor will review these claims and determine if these claims are duplicative and if so, an appropriate objection will be filed with the Court. The Debtor will be reviewing all other claims and determining whether other objections should be filed.

[4] The Class 4 Unsecured Claims also includes the claims of Rufino Lopez in the amount of $400,000 and Solera Corp. in the amount of $232,000. Both Mr. Lopez and Solera Corp. have agreed to waive their Class 4 Claims. As a result, the estimated amount listed in the table do not include these Claims.

| Class and Estimated Amount | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | any excess Cash shall be distributed to the Holders of Interests. Except for this distribution and the preservation of Causes of Action, Holders of Interests shall neither receive nor retain any other property under the Plan. As set forth in Article 6 of the Plan, all Interests shall be cancelled and of no further force or effect. |

**CONFIRMATION OF THE PLAN**

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on _____, 2014 at _:__.m., Eastern Time, in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140. The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before _____2014 at ___:00 p.m., in the manner described under "ACCEPTANCE AND CONFIRMATION -- Confirmation Hearing."

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. **The Debtor believes that the Plan satisfies all applicable requirements of section 1129(a) and section 1129(b) of the Bankruptcy Code.** See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" for a description of such requirements. Confirmation makes the Plan binding upon the Debtor, all Creditors, and other parties (including Holders of Interests) regardless of whether they have accepted the Plan.

With the entry of the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise provided in the Plan, the distributions provided for in the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims against the Debtor or any of its assets or properties, including any Claim accruing after the Petition Date and before the Confirmation Date. As of the Effective Date, all holders of Claims shall be precluded from asserting any Claim against the Debtor or its assets or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

**NO VOTING FOR CREDITORS — SUMMARY**

**THE PLAN PROVIDES FOR PAYMENT IN FULL ON THE EFFECTIVE DATE TO EACH CLASS OF CREDITORS OR THE TRANSFER OF SECURED CREDITOR'S COLLATERAL TO SUCH SECURED CREDITOR, WHICH ARE CLASSES 1 THROUGH 4. AS EACH CLASS OF CLAIMS IS UNIMPAIRED, HOLDERS OF CLAIMS ARE NOT BEING SOLICITED, ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN AND ARE DEEMED TO HAVE ACCEPTED THE PLAN.**

VOTING INSTRUCTIONS FOR INTERESTS -SUMMARY

Holders of Interests in Class 5 are the only Holders of Claims or Interests that are entitled to vote on the Plan. The following discussion summarizes more detailed voting instructions set forth in the section of this Disclosure Statement entitled "VOTING INSTRUCTIONS." If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General.** None of the Debtor's Creditors are impaired under the Plan. All Classes of Claims are unimpaired and are deemed to have accepted the Plan. As a result, the Debtor has sent to all of its known Creditors a copy of this Disclosure Statement without a ballot. The Debtor has sent a ballot and a copy of this Disclosure Statement to the Holders of Interests because they are impaired under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of two-thirds in amount of the Allowed Class 5 Interests who actually vote on the Plan.

In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the class rejecting it and (ii) at least one impaired class of creditors excluding insiders has accepted the Plan.

**Voting Multiple Interests.** A single form of ballot is provided for each Class of Interests. Any Person who holds more than one Interest will be deemed to hold only a single Interest in such Class in the aggregate amount of all Allowed Interests in such Class held by such Person. Thus each Person need complete only one ballot for Class 5 Interests.

**Deadline for Returning Ballots.** The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor, no later than 5:00 p.m., Eastern Time, on _____, 2014 at the following address:

**Robinson Brog Leinwand Greene Genovese & Gluck P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
**Attention: Steven B. Eichel, Esq.**

**Voting Questions**. If you have any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing your ballot, you may contact Steven B. Eichel, Esq. at (212) 603-6345.

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

The Holders of Claims are unimpaired and are deemed to have accepted the Plan. Holders of Interests are impaired and are entitled to vote on the Plan. As a result, this Disclosure Statement and an accompanying notification of non-voting status is furnished by the Debtor to the Debtor's known Creditors and the Disclosure Statement and ballot is being sent to the Holders of Class 5 Interests pursuant to section 1125(b) of the Bankruptcy Code. The Plan is (i) filed with the Bankruptcy Court, (ii) included in this package and (iii) incorporated herein by reference. Parties in interest may view the Plan on the Internet at http://www.nysb.uscourts.gov.[5]

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE DEBTOR, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON THE DECISION OF THE INTEREST HOLDERS TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED**

---

[5] A password is necessary for access to view documents on the Internet.

**IN THIS DISCLOSURE STATEMENT.   ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court.  The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court.  While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents.  While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents.  Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof.  In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.  In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."  No statements or information concerning the Debtor or its assets, results of business operations or financial condition, are authorized by the Debtor other than as set forth in this Disclosure Statement, the Plan and the exhibits hereto.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein.  The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended to allow Holders of Interests to make an informed decision about the Plan.  Each holder of an Interest should review this Disclosure Statement, the Plan and all exhibits hereto before casting a ballot.  Holders of Claims and Interest are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.  No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto.  You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

**RECOMMENDATION**

In the Debtor's opinion, the treatment of Creditors and Interest Holders under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." In particular, the Debtor believes that in a Chapter 7 liquidation, administrative costs will be greater, and, after payment to Breakers and Other Secured Claims on account of their secured claims, it is unlikely that unsecured creditors would receive any distribution on account of their Claims greater than is provided under the Plan. Further, the Debtor believes that the value of any distribution in a chapter 7 liquidation case will be discounted by the litigation and delays which will precede any such distribution. The Plan provides for payment in full to each class of Creditors and a distribution to Interest Holders if there is any money remaining after the required payments under the Plan. Moreover, the Interest Holders retain the Debtor's Causes of Action.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS AND URGES EACH INTEREST HOLDER ENTITLED TO VOTE TO ACCEPT THE PLAN.**

### THE DEBTOR

The Debtor owns the Property, which is a four story building located at 216 East 53rd Street, New York, New York. Mr. Rufino Lopez is the managing member and 51% owner of the Debtor, and is also the managing member of Solera Corp., the Debtor's primary tenant, which is the entity through which Mr. Lopez operates a restaurant at the Property, utilizing the basement, ground floor, rear yard and second floor. The restaurant has been in business on the Property since 1996. Solera Corp.'s lease with the Debtor expired on June 30, 2011 and it currently occupies the Property on a month to month basis.

The Debtor's Property also includes two office units, one per floor, on the third and fourth floors. The fourth floor is vacant and the third floor is occupied by Japan Executive Club, Inc., a private club for Japanese ex-patriate businessmen.

### EVENTS LEADING TO CHAPTER 11

On July 23, 2013 (the "**Petition Date**"), Solera Holdings L.L.C. filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

### LOAN HELD BY BREAKERS AND THE FORECLOSURE ACTION

BPD Bank ("**BPD**") and the Debtor are party to certain: (i) Consolidated First Mortgage Promissory Note in the amount of $3,5000,000, dated November 9, 2006 (the

"**Note**"); (ii) Consolidated Mortgage and Security Agreement, dated November 9, 2006 (the "**Mortgage**"); (iii) Assignment of Leases and Rents, dated November 9, 2006 (the "**Assignment of Rents**"); (iv) Mortgage Modification and Extension Agreement, dated as of December 15, 2010 (the "**Modified Mortgage**"); (v) Modified and Restated Consolidated First Mortgage Promissory Note in the amount of $3,500,000 dated as of October 2011 (the "**Modified Note**" and together with the Note, the Mortgage, the Assignment of Rents, the Modified Mortgage and certain related documents are referred to collectively as the "**Loan Documents**"). The Loan Documents evidence a loan to the Debtor from BPD Bank in the principal amount of $3,500,000 (the "**Loan**").

The Loan matured without repayment and on May 10, 2012, BPD commenced the Foreclosure Action in State Court by summons and complaint. On May 31, 2013, BPD sold its interest in the Loan to Breakers. Breakers obtained a series of *default* decisions in its favor, including (i) a Decision, dated November 21, 2012 for summary judgment and for an order for a referee to compute and amend the caption (the "**Summary Judgment Decision**") and (ii) a Decision, dated April 3, 2013, for a judgment of foreclosure and sale and approving the report of the referee and setting the terms of sale (the "**Foreclosure Decision**").

On or about April 24, 2013, Debtor's state court counsel filed an emergency order to show cause to vacate the Foreclosure Decision (the "**OTSC**") which was denied on June 6, 2013 (the "**Default Judgment Vacatur Decision**"). The Debtor immediately appealed the Default Judgment Vacatur Decision.

On June 6, 2013, an Order and Judgment was signed by the Honorable Carol E. Huff in the Foreclosure Action (the "**Foreclosure Judgment**") in favor of Breakers in the amount of $4,718,891.22 together with interest thereon accrued from and after January 13, 2103.

Without notifying the Debtor and prior to entry of the Foreclosure Judgment, Breakers published Notices of Sale in the Daily News on June 19, June 26, July 3, and July 10, 2013 indicating that a judgment of foreclosure was signed and entered and the scheduling a sale of the Property for July 17, 2013 (the "**Foreclosure Sale**").

On July 12, 2013, the Foreclosure Judgment was entered by the Clerk of the State Court. On July 16, 2013, Notice of Entry of the Foreclosure Judgment was filed in the Foreclosure Action.

On or about July 17, 2013, Debtor's counsel contacted Breakers' counsel to adjourn the initial Foreclosure Sale. The Debtor's prior state court counsel signed a stipulation on behalf of all defendants in the Foreclosure Action providing that, *inter alia*, all defendants acknowledged that they had no defenses in the Foreclosure Action and agreed to

withdraw the pending notice of appeal in the Foreclosure Action.

The Debtor and Breakers have now reached an agreement with respect to the Breakers Claim that, upon confirmation of the Plan, will resolve the Allowed Breakers Secured Claim and the Foreclosure Action.

## SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

On July 23, 2013, the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York. The following discussion is intended to highlight some of the more significant events which have occurred during the pendency of the Debtor's case.

## RETENTION OF PROFESSIONALS

Section 327(a) of the Bankruptcy Code provides that a debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

On August 1, 2013, the Debtor sought authority from the Bankruptcy Court to retain the law firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C., as its counsel. The application was granted effective as of the Petition Date pursuant to an order signed on October 25, 2013.

## DEBTOR'S MOTION TO (I) ENFORCE AUTOMATIC STAY, (II) HOLD BREAKERS IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY AND (III) AUTHORIZE DISCOVERY

Immediately after the commencement of the Debtor's bankruptcy case, the Debtor sent a letter to Breakers advising it of the commencement of the Bankruptcy Case and the provisions of Bankruptcy Code section 362(a).

On September 19, 2013, Breakers filed a motion in the Foreclosure Action seeking to, among other things: (i) modify the Foreclosure Judgment against the Debtor; and (ii) enforce the July 17 Document (the "**Judgment Modification Motion**"), with a return date of September 30, 2013 at 9:30 a.m. The Judgment Modification Motion was not served on the Debtor's bankruptcy counsel and the Debtor only learned of the Judgment Modification Motion after its return date passed.

The Judgment Modification Motion, filed after the Petition Date, seeks to specifically name the Debtor and non-debtors to the Foreclosure Judgment.

On October 1, 2013, the Debtor sent a letter (the "**October 1 Letter**") to Breakers' attorney advising it of its breach of the automatic stay and demanding that it immediately withdraw the Judgment Modification Motion. Shortly thereafter, the Debtor's counsel received a letter from Breakers' state court counsel indicating that it never intended to seek relief against the Debtor but would not consent to withdrawal of the Judgment Modification Motion as against non-debtors and annexed a proposed order (the "**Proposed Modification Order**") that would modify the Foreclosure Judgment to only add non-debtor defendants.

Debtor's counsel immediately responded to Breakers' October 1 Letter that it would not consent to any such Proposed Modification Order on a Judgment Modification Motion made in violation of the automatic stay and that Breakers' must withdraw its Judgment Modification Motion in its entirety.

On October 2, 2013, Breakers filed a partial withdrawal of its Judgment Modification Motion (the "**Partial Motion Withdrawal**"), which still sought modification of the Foreclosure Judgment and annexed the same Proposed Modification Order. Debtor's bankruptcy counsel was not served on the Partial Motion Withdrawal and did not learn of it until one week later. On October 11, 2013, the Debtor filed a letter with the Court in response to the Partial Motion Withdrawal.

On October 10, 2013, the Debtor filed a motion requesting the entry of an order to (i) enforce the automatic stay with respect the Foreclosure Action, (ii) hold Breakers in contempt for willful violation of the automatic stay for continuing to proceed in the Foreclosure Action after the commencement of the Debtor's Bankruptcy case without relief from the automatic stay from the Bankruptcy Court, and (iii) authorize it to issue subpoenas directing the production of documents and the examination of witnesses pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Contempt and Discovery Motion**"). On October 17, 2013, Breakers filed the Breakers Reply. On October 21, 2013, the Debtor filed its Reply in Support of the Contempt and Discovery Motion. On October 25, 2013, the Debtor filed a notice adjourning the hearing, which notice also indicated that the Debtor withdrew the portion of its motion that sought to enforce the automatic stay and hold Breakers in contempt for violating the automatic stay.

## BREAKERS' RULE 2004 MOTION

On August 26, 2013, Breakers filed a motion pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure seeking authorization to conduct a deposition of the Debtor and direct the production of certain documents (the "**Breakers' 2004 Motion**"). On September 12, 2013, the Debtor filed an objection to the Breakers' 2004 Motion. On October 17, 2013, Breakers filed its reply in further support of the Breaker's 2004 Motion and objection to Debtor's motion for contempt and for Rule 2004 examination

(described below) (the "**Breakers' Reply**"). The hearing on the Breakers' 2004 Motion was adjourned several times and was scheduled to be heard on February 4, 2014. At a conference held on February 4, 2014, Debtor's counsel advised the Court that the Property would be sold in connection with a plan that would pay the secured lender in full by May 31, 2014 or else the Property would be conveyed to Breakers by quitclaim deed or Breakers could conduct a foreclosure sale of the Property. At that conference, Debtor's counsel further advised the Court that Debtor agreed that the automatic stay would be vacated as to Breakers, but Breakers would forbear from conducting a foreclosure sale of the Property until May 31, 2014.

**BREAKERS' ADEQUATE PROTECTION MOTION**

On October 3, 2013, the Debtor filed a motion pursuant to sections 361 and 363 of the Bankruptcy Code seeking the entry of an order compelling the Debtor to provide adequate protection of Breaker's interest in its collateral held by the Debtor (the "**Adequate Protection Motion**"). On October 17, 2013, the Debtor objected to the Adequate Protection Motion. The hearing on the Adequate Protection Motion was adjourned along with Breakers' 2004 Motion to February 4, 2014. At a conference held on February 4, 2014, Debtor's counsel advised the Court that the Property would be sold in connection with a plan that would pay the secured lender in full or the Property would be conveyed to Breakers by quitclaim deed.

**DEBTOR'S MOTION TO EXTEND EXCLUSIVE PERIODS AND FILING OF PLAN AND DISCLOSURE STATEMENT**

On October 21, 2014, the Debtor filed a plan of reorganization. On November 20, 2013, the Debtor filed a motion under Bankruptcy Code section 1121 seeking to extend the time within which the Debtor has the exclusive right to file a plan and to solicit acceptances with respect thereto to and including February 18, 2014 and April 19, 2014, respectively. The hearing on the motion was adjourned to February 4, 2014. At that hearing, the Court signed an order extending the Debtor's exclusive right to file a Chapter 11 plan to and including March 3, 2104. On March 3, 2014, the Debtor filed the Plan of Liquidation of Solera Holdings L.L.C. and an accompanying disclosure statement. On April 10, 2014, the Debtor filed the Amended Plan of Liquidation of Solera Holdings L.L.C. and this accompanying Disclosure Statement.

**BREAKERS' MOTION TO CONVERT**

On January 10, 2014, Breakers filed a motion to convert the Debtor's Chapter 11 case to Chapter 7 (the "**Motion to Convert**"). On January 29, 2014, the Debtor responded to the Motion to Convert. On January 31, 2014, Breakers filed its reply in further support of its Motion to Convert. The hearing on the Motion to Convert was scheduled for

February 4, 2014. At a conference held on February 4, 2014, Debtor agreed to file a plan selling the Property to JMVD Realty Partners 8 for $5.7 million and providing for the payment in full of Breakers' secured claim not later than May 31, 2014, and Debtor agreed that Breakers could conduct a foreclosure sale of the Property, if it were not paid in full on or before May 31, 2014. The hearing on the Motion to Convert was adjourned.

## BAR DATE

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor has filed its Schedules of Assets and Liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. Pursuant to section 501 of the Bankruptcy Code, any creditor may file a Proof of Claim and, unless disputed, such filed Proof of Claim supersedes the amount and priority set forth in the Debtor's schedules. By order of the Bankruptcy Court dated November 4, 2013, December 10, 2013 was set as the last day for creditors to file Proofs of Claim in the Debtor's Chapter 11 case, and January 20, 2014 was set as the last day for governmental units to file Proofs of Claim.

There can be no assurance that the Allowed Claims as determined by the Bankruptcy Court will be in the amounts and priorities stated in the Schedules filed by the Debtor or the Proofs of Claim filed by the Creditors.

## SOLERA CORP. STIPULATION

On March 4, 2014, the Debtor filed the Motion for Entry of Proposed Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Stipulation and Order With Regard to Payment of Post-Petition Use and Occupancy Arrears by Solera Corp, (the "**Solera Corp. Stipulation**") to be presented on March 25, 2014. The Solera Corp. Stipulation would resolve all issues regarding unpaid post-petition use and occupancy obligations between the Debtor and Solera Corp. The presentment date of the Solera Corp. Stipulation was further adjourned to April 1, 2014 and again to April 11, 2014.

On April 9, 2014, the Debtor submitted a revised Solera Corp. Stipulation.

## OPERATING REPORTS

Pursuant to the requirements of the Office of the United States Trustee for the Southern District of New York, the Debtor has filed monthly operating reports with the Bankruptcy Court through January 2014. Copies of such reports may be obtained (i) from the Bankruptcy Court during normal business hours, (ii) upon written request made to counsel for the Debtor, or (iii) from the Bankruptcy Court's Electronic Case Filing System

("ECF")[6] which may be accessed at the Bankruptcy Court's Internet website at
www.nysb.uscourts.gov.

### SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which is filed with the Clerk of the Bankruptcy Court and which is incorporated herein by reference.

### CLASSIFICATION OF CLAIMS AND INTERESTS

Classification of claims is governed, in part, by sections 1122 and 1123(a) of the Bankruptcy Code. Section 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. §1123(a)(1), (3) and (4). Section 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into four classes of Claims and one class of Interests:

> Class 1 - Priority Non-Tax Claims
> Class 2 - Breakers Secured Claim
> Class 3 - Other Secured Claims
> Class 4 - Unsecured Claims
> Class 5 - Interests

As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

Class 1 is unimpaired and the Holders of Class 1 Priority Non-Tax Claims shall not be entitled to vote on the Plan. Class 2 is unimpaired and the Holders of Class 2 Breakers Secured Claim shall not be entitled to vote on the Plan. Class 3 is unimpaired and the Holders of Class 3 Other Secured Claims shall not be entitled to vote on the Plan. Class 4 is unimpaired and the Holders of the Class 4 Unsecured Claims shall not be entitled to vote

---

[6]Filing documents on the ECF requires a password which an attorney may obtain by contacting the Bankruptcy Court's technical assistance department, Monday through Friday, 9:00 a.m. to 4:00 p.m.

on the Plan.  Class 5 is impaired and the Holders of Class 5 Interests shall be entitled to vote on the Plan.

**Class 1 – Priority Non-Tax Claims.**  Class 1 consists of all Claims, other than Administrative Claims, Priority Tax Claims, or Bankruptcy Fees, to the extent entitled to priority under section 507 of the Bankruptcy Code.  Certain Claims for taxes and the payment of expenses incurred by the Debtor subsequent to the Petition Date are entitled to priority under section 507 of the Bankruptcy Code, and are treated elsewhere as non-classified Claims.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."  The Debtor does not believe that any such Priority Non-Tax Claims exist, as no entity filed a proof of claim asserting a priority claim that would fall within Class 1.

**Class 2 – Breakers Secured Claim.** Class 2 consists of the Allowed Breakers Secured Claim.

**Class 3 – Other Secured Claims.** Class 3 consists of the Secured Claims of (i) New York City Department of Finance and (ii) First Insurance Funding Corp.

**Class 4 - Unsecured Claims.**  Class 4 consists of all Unsecured Claims.

**Class 5 – Interests.**  Class 5 consists of all interests in the Debtor.

## TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Article 4 of the Plan provide for the treatment of the unimpaired Claims and impaired Interests classified in Article 3 of the Plan.  Allowed Claims in Classes 1, 2, 3 and 4 are not impaired.   Allowed Interests in class 5 are impaired.

**Class 1 – Priority Non-Tax.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Non-Tax Claims, each Holder of a Priority Non-Tax Claim shall receive on the Effective Date, or as soon as practicable after such Claim becomes an Allowed Claim, payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Non-Tax Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the Holder of such Priority Non-Tax Claim.

**Class 2 – Allowed Breakers Secured Claim.**  Breakers is recognized as the holder of a judgment issued by the Justice Carol E. Huff of the Supreme Court of the State of New York for the County of New York (the "State Court") in the action captioned Breakers Capital LLC v. Solera Holdings L.L.C., et al., Index No. 850046/2012 awarding judgment in favor of Breakers against Solera Holdings L.L.C. (the "Debtor") and others in the amount of $4,718,891.22 plus interest thereon (the "Judgment"), which Judgment together with a Bill of

Costs was entered by the Clerk of the State Court on July 12, 2013. The Judgment is valid and enforceable and Debtor has no defenses thereto.

The Holder of the Allowed Breakers Secured Claim will receive via wire transfer, no later than the Closing Deadline, Cash in the Compromised Claim Amount from the Sale Proceeds in full satisfaction of the Allowed Breakers Secured Claim, with TIME BEING OF THE ESSENCE. If, however, the sale of the Property to Purchaser does not close on or before the Closing Deadline and Breakers is not paid the Compromised Claim Amount on or before the Closing Deadline, then Breakers may proceed immediately, without further order of the Bankruptcy Court, to conduct and consummate a foreclosure sale of the Property in connection with the Foreclosure Action, which sale shall be deemed to constitute a transfer of the Property pursuant to this Plan for purposes of Section 1146(c) of the Bankruptcy Code.

If the sale of the Property to Purchaser does not close on or before the Closing Deadline and Breakers seeks to conduct a foreclosure sale of the Property, then Debtor, Solera Corp. and their common principal, Rufino Lopez will be deemed to have consented to the foreclosure sale and to have waived any and all rights to contest or challenge it in any court for any reason. If Breakers conducts a foreclosure sale of the Property, Solera Corp. will remain liable for any unpaid amounts that it did not pay the Debtor with respect to the period preceding the filing of the Case (including amounts for rent, use and occupancy and unpaid real estate taxes) and Solera Corp. will be deemed to have irrevocably consented to the entry of a judgment of possession and immediate issuance and execution of a warrant of eviction in favor of the successful purchaser at the foreclosure sale (or its designee) to recover possession from it and Solera Corp. will be deemed to have waived any right to seek a stay of the judgment of possession or warrant of eviction or to appeal from the issuance of either, or to otherwise continue to occupy any space in the Property.

The Allowed Breakers Secured Claim will be allowed in the amount of $5,455,000 as of June 2, 2014 (with interest accruing in the amount of $946.18 per diem thereafter), provided, however, that if Debtor does not pay Breakers the Compromised Claim Amount on or before the Closing Deadline (other than due to a *sua sponte* adjournment by the Court of the confirmation hearing date due to its scheduling needs), then the amount of Breakers' allowed secured claim in this case as of June 2, 2014 will be $5,553,251.95 (with interest accruing in the amount of $946.18 per diem thereafter).

**Class 3 – Other Secured Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of each Other Secured Claim, each Holder of an Other Secured Claim shall receive, at the Debtor's option, on the Effective Date, or as soon as practicable after each such Other Secured Claim becomes an Allowed Claim, (i) Cash, in the full amount of its Claim, (ii) the return of its

collateral in full satisfaction of its Claim, or (iii) such other treatment as to which the Debtor and each Holder of such Other Secured Claim shall have agreed upon in writing.

**Class 4 – Unsecured Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, settlement, release and discharge of the Class 4 Unsecured Claims, the Holders of the Class 4 Unsecured Claims against the Debtor shall receive, on the Effective Date, Cash equal to 100% of their Allowed Claim from the Disbursing Agent. Rufino Lopez, a Class 5 Interest Holder, and Solera Corp., both Holders of Class 4 Unsecured Claims against the Debtor, are each deemed to have irrevocably waived and released their claims against the Debtors under the Plan. Solera Corp. has agreed that to the extent that the Debtor has insufficient Cash to pay all the Allowed Class 4 Unsecured Claims in full, then it shall pay such sums as is necessary on the Effective Date or as otherwise required by the Plan to ensure that all Holders of Allowed Class 4 Unsecured Claims are paid as provided for in the Plan.

**Class 5 – Interests**. After all payments are made under the Plan, any excess Cash shall be distributed to the Holders of Interests. Except for this distribution and the preservation of Causes of Action, Holders of Interests shall neither receive nor retain any other property under the Plan. As set forth in Article 6 of the Plan, all Interests shall be cancelled and of no further force or effect.

## TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under section 507(a)(2) of the Bankruptcy Code or Claims of governmental units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals[7], such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

---

7 Although the Claims of professionals are administrative claims, for purposes of disclosure, this Disclosure Statement separately categorizes the amount of the Debtor's professional fees.

Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Debtor in Cash in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three Business Days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however*, that any Administrative Claim incurred by the Debtor in the ordinary course of its business will be paid in full in accordance with the terms and conditions of the particular transactions giving rise to such Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is 60 days after the Effective Date. In the event that the Plan is confirmed, the Debtor shall deliver a notice of such bar date to all parties-in-interest.

**Professionals' Fees.** Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by a Debtor in a case under the Bankruptcy Code. In general, "bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

With respect to Professionals' Fees, the Plan provides that, subject to the approval of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Debtor shall pay the Administrative Claims held by Bankruptcy Professionals as follows:

No later than three days prior to the Confirmation Date, each Professional shall provide the Debtor with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code. Such estimates shall include estimated sums for the preparation and prosecution of any application for final compensation. On the Effective Date, the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full unless otherwise agreed to by the Debtor and such Professionals; *provided, however,* that the failure of a Professional to provide such an estimate shall relieve the Debtor of its obligation to segregate funds for the payment therefore, but shall not relieve the Debtor of the obligation with respect to any allowed compensation and expense reimbursement.

All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the

Bankruptcy Code no later than the Administrative Bar Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, and upon the Debtor in accordance with the Bankruptcy Rules. Any such objection not timely filed and served shall be deemed to have been waived.

**Administrative Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by governmental units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such governmental unit on or before the Confirmation Date.

**Priority Tax Claims**. Except as may be otherwise mutually agreed in writing between the Debtor and such governmental units, all Allowed Priority Tax Claims of governmental units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code, shall be paid in full and receive on account of such claim, Cash in the amount of such Allowed Claim on the Effective Date.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor or its Estate under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid in Cash in full by the Debtor as required by statute, and until the closing, conversion or dismissal of this Case, whichever is earlier.

## DISPUTED CLAIMS AND INTERESTS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim may be filed no later than the later to occur of (i) 60 days after the Effective Date or (ii) 60 days after the date proof of such Claim or Interest or a request for payment of such Claim is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, Claims shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of distributions on account of Claims. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to Disputed Claims or Interest or (iii) such other times provided in the Plan. All Cash payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank. To the extent that any distribution is not paid on the Effective Date, funds in an amount necessary to satisfy any such unpaid claim shall be maintained in an escrow account for distribution thereafter.

**Disbursing Agent.** Debtor's counsel, the law firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C., will be the Disbursing Agent and will distribute all Cash or other property to be distributed under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

**Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within five days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

**Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank, except that the payment to Breakers on account of the Allowed Breakers Secured Claim must be made on or before the Closing Deadline via wire transfer pursuant to wire transfer instructions delivered by or on behalf of Breakers to the Disbursing Agent not later than May 27, 2014.

**Claims Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve any objection to any Claim or Interest (other than the Allowed Breakers Secured Claim, which is not a Disputed Claim) at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

**Prosecution of Objections.** Except as otherwise provided herein, after the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims, and the Debtor may comprise any objections to Disputed Claims without further order of the Court.

**No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order. This provision will not apply to the Allowed Breakers Secured Claim, which is not a Disputed Claim.

**Escrow of Cash Distributions.** (a) After the Allowed Breakers Secured Claim has been paid or the Property has been sold in a foreclosure sale in connection with the Foreclosure Action, on any date that distributions are to be made under the terms of the Plan, the Debtor shall make available any and all funds required under Plan to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, all of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of governmental units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b) The Debtor shall have the right to seek an Order of the Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim. Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Such Creditor shall have recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Debtor.

**Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

**Investment of Segregated Cash.** To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by

section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds. Segregated Cash shall be maintained in an authorized depository.

**Distribution After Disallowance.** Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtor.

**Surrender of Instruments; Execution of Satisfactions and Releases.** (a) No Creditor that holds a note (other than the Breakers Note) or other instrument evidencing such Creditor's Claim may receive any cash distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim (other than Breakers Security Documents) shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor. Unless otherwise agreed to in writing by the Purchaser and Breakers, within four Business Days after Breakers has received confirmation that it has received payment in full via wire transfer of the allowed amount of its claim on before the Closing Deadline in accordance with the terms of the Plan, Breakers will deliver to the Disbursing Agent a satisfaction of the Breakers Note and of the Breakers Security Documents, and it will be the responsibility of the Disbursing Agent to deliver same to Purchaser or as Purchaser may direct in writing.

(b)     Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)     In the event any Creditor is required but unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent: (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(d)     All questions as to the validity, form or eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. The Debtor and the Disbursing Agent shall not be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

**Delivery of Distributions.**    Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

**Undeliverable Distributions.**    (a) If the distribution to the Holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address.    Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b)    Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has become deliverable during the preceding quarter.    Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)    Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim or an Allowed Interest.

**Unclaimed Distributions.**    Any Cash or other property to be distributed under the Plan shall revert to the Debtor if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article 4 of the Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's claim shall be reduced to zero.

**Setoffs.**    The Disbursing Agent (on behalf of the Debtor) may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights, Causes of Action and liabilities that the Debtor has or may have against such Holder.    The Allowed Breakers Secured Claim is not and will not be subject to any setoff by the Debtor or its Estate.    To the extent the Disbursing

Agent elects to effectuate a set-off, it shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off.  To the extent the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the Debtor and the Disbursing Agent no later than three (3) days prior to the set-off date or the objection shall be waived.

### EFFECTIVE DATE

The Effective Date of the Plan shall be the first Business Day after which all of the conditions to the Effective Date, specified in section 11.1 of the Plan, have been satisfied.

### CONDITIONS TO CONFIRMATION OF THE PLAN

The Plan will not be confirmed unless and until the following conditions have been satisfied in full:

(a)    The Confirmation Order is in form and substance reasonably satisfactory to Breakers and the Confirmation Order does not affect, directly or indirectly, any rights, claims, or interests of Breakers or the Allowed Breakers Secured Claim, except as expressly set forth in the Plan, and the Confirmation Order approves all provisions, terms and conditions of the Plan.

(b)    The Confirmation Order will provide that, if the Contract of Sale has been terminated or if Breakers has not received on or before the Closing Deadline via wire transfer payment in full of the Compromised Claim Amount, Breakers may proceed immediately with a foreclosure sale of the Property, and the closing of such sale will constitute a transfer of the Property under a chapter 11 plan of reorganization that is exempt from transfer taxes pursuant to section 1146(a) of the Bankruptcy Code.

(c)    No material amendments, modifications or alterations shall have been made to the Plan that would affect, directly or indirectly, any rights, claims or interests of Breakers or the Breakers' Allowed Breakers Secured Claim under the Plan if the Plan were not confirmed, without the express written consent of Breakers.

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

The conditions precedent to the Plan becoming effective differ depending upon whether the sale of the Property closes.

*In the Event the Sale to Purchaser Closes.* If the Debtor's right, title and interest in and to the Property is sold to Purchaser under the Plan, on or before the Closing Deadline, then the Plan will become effective once the following conditions have been satisfied or waived:

(a)     The Confirmation Order, in form and substance reasonably satisfactory to Breakers, shall not affect, directly or indirectly, any rights, claims or interests of Breakers or the Allowed Breakers Secured Claim under the Plan or if the Plan were not confirmed, and shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the of the transfer of the Property and the Confirmation Order shall not have been modified or vacated on appeal.

(b)     On or before the Closing Deadline, the Closing has occurred, and the Allowed Breakers Secured Claim has been paid in cash in full in accordance with the terms of the Plan.

*In the Event the Sale to Purchaser Does Not Close.* If the Purchaser does not close on the Purchase of the Property, or if the Allowed Breakers Secured Claim has not been timely paid in cash in full in accordance with Section 4.2 of the Plan, then the Plan will become effective once the following conditions have been satisfied or waived:

(a)     The Confirmation Order, in form and substance reasonably acceptable to Breakers, shall have been entered in this Case.

(b)     The Closing Deadline has passed or the Contract of Sale has been terminated.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Assumption and Assignment of Executory Contracts and Unexpired Leases.** On the Effective Date, all Executory Contracts and Unexpired Leases not expressly set forth in a separate motion or the Plan prior to the Confirmation shall be deemed assumed and assigned to the Purchaser in accordance with section 365 of the Bankruptcy Code. For

the avoidance of doubt, Solera Corp. and the Debtor were not parties to any Unexpired Lease or Executory Contract as of the Petition Date

**Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a Class 4 Unsecured Claim.

**Bar to Rejection Claims.** A Proof of Claim with respect to a Class 4 Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor not later than 30 days after the earlier of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date. Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or its successors or their respective properties.

**New Lease of Solera Corp.** Notwithstanding anything contained in the Plan or in the Contract of Sale to the contrary, Solera Corp. may not be a tenant at or occupy space in the Property following Plan Confirmation, and any lease between Solera Corp., and Purchaser or its designee will be void and of no force and effect, unless the Holder of the Allowed Breakers Secured Claim shall have received via wire transfer no later than the Closing Deadline, cash in the Compromised Claim Amount, and Purchaser has acquired all of Debtor's right, title and interest in and to the Property.

## IMPLEMENTATION OF THE PLAN

**IMPLEMENTATION.**

The Debtor and Purchaser must take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. The Purchaser is authorized to purchase the Property, which Property is located at 216 East 53rd Street, New York, New York in accordance with the Plan and the Contract of Sale, which was delivered to counsel for Breakers on February 4, 2014 and that is attached to the Plan as Exhibit A, provided however, that in the event of any inconstancy between the Contract of Sale and the Plan, the terms of the Plan shall govern. Debtor must provide Breakers' counsel, Paul A. Rubin, Esq., Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, New York 10001 at least three Business Days advance written notice of the date, time and location of the Closing and the identity of the Purchaser. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and the Purchaser and any other necessary party to, among other things, (i) execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the

Property required by the Plan, and (iii) perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

## PLAN FUNDING.

The Plan shall be funded by the Sales Proceeds, the Debtor's Available Cash on the Effective Date, including all amounts available in the Debtor's Debtor in Possession bank account, and the past-due post-petition obligations paid by Solera Corp. to the Debtor. These funds shall be utilized to satisfy payments due consistent with the terms of the Plan. If the Debtor has insufficient funds to pay all claims in full, Solera Corp. shall pay the shortfall, such that all claims are paid in full on the Effective Date.

## SALE OF ASSETS.

In order to fund the distributions under the Plan, the Debtor must consummate the closing and sale of the Property to the Purchaser on or before the Closing Deadline. Breakers will not be required to deliver an assignment of the Breakers Note or any of the Breakers Security Documents. The sale to Purchaser, or alternatively the transfer of the Property pursuant to a foreclosure sale of the Property under the Plan, will not be taxed under any law imposing a stamp or similar tax as provided for in section 1146 of the Bankruptcy Code. Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the Debtor's Property shall be sold to the Purchaser, free and clear of any and all Liens, Claims, and encumbrance, other than the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan, or alternatively, if the sale to purchaser does not close before the Closing Deadline and Breakers is not paid the Compromised Claim amount on or before the Closing Deadline, then all of the Debtor's right, title and interest in and to the Property will be transferred to the successful purchaser in the foreclosure sale conducted in accordance with Section 4.2 of the Plan.

## VESTING OF ASSETS.

Except as otherwise provided in the Plan, on the Effective Date, all of the Debtor's assets remaining after the sale of the Property and payment to the Creditors on account of their Claims, including any and all Causes of Action, shall become vested in the Debtor free and clear of all Liens, Claims and encumbrances. For the avoidance of doubt, there are no Causes of Action against Breakers or any of its owners, members, officers or agents. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

## EXECUTION OF DOCUMENTS.

       (a)     On the Effective Date, the Debtor, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions expressly described in the Plan.

       (b)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, except with respect to the Allowed Breakers Secured Claim, the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**FILING OF DOCUMENTS.**

       Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan.

**DISTRIBUTIONS.**

       Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

**PRESERVATION OF RIGHTS OF ACTION.**

       (a)     Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain any claims, rights and Causes of Action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity, that is not released pursuant to the Plan

       (b)     Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or Cause of Action (other than a claim of the Debtor against Solera Corp. relating to the time period preceding the commencement of the Case), shall be retained by the Debtor following the satisfaction of all other Allowed Claims under the terms of the Plan.

(c)      The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any claim, document or agreement, except for the Allowed Breakers Secured Claim, the Breakers Security Documents, the Order and Judgment issued by the Justice Carol E. Huff of the Supreme Court of the State of New York for the County of New York in the Foreclosure Action against the Debtor and others in the amount of $4,718,891.22 plus interest thereon, and any stipulation signed by the Debtor in the Foreclosure Action and the Debtor's Case.

**TRANSFER TAXES.**

(a)      Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, including any such taxes due on the sale or transfer of the Property as contemplated by the Plan, and to the extent provided by 1146(a), if any, shall not be subject to any state, local of federal law imposing such tax.

(b)      Pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the appropriate recording office(s) to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.  The appropriate recording office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

**DISSOLUTION OF CORPORATE EXISTENCE.**

After the Case has been closed, the Debtor shall be dissolved and shall have no continuing corporate existence, subject only to the Debtor's Plan imposed obligation to satisfy the Allowed Claims against the Debtor's Estate.  To the extent permitted by law, the dissolution of the Debtor shall not abate or suspend a proceeding commenced by the dissolving Debtor by reason of the dissolution, and the Debtor shall nevertheless be deemed a continued corporate body as necessary for the sole purpose of winding up its affairs, including the prosecution of any proceedings.  Upon the final payment and satisfaction of the last of such Plan imposed obligations, the Debtor (A) shall be deemed dissolved and withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such dissolution and withdrawal; (B) shall be deemed to have all of its Interests cancelled pursuant to the Plan; and (C) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes that otherwise would have accrued on or after the Effective Date, all without the necessity for any other or further actions to be taken on behalf of such Debtor;

provided, however, that the Debtor may, if it so elects, and any officer of the Debtor, shall be an authorized signatory for such purposes, prepare and file all corporate resolutions, statements, notices, tax returns, or certificates of dissolution, prosecute any actions pursuant to the Plan  and dispose of and take any other action with respect to the revesting of assets pursuant to the Plan.

## SALE CLOSING DEADLINE.

The sale of the Property to Purchaser and the payment to Breakers in the full amount of the Allowed Breakers Secured Claim must occur on or before the Closing Deadline, but in no event beyond June 23, 2014, TIME BEING OF THE ESSENCE.

# MISCELLANEOUS PROVISIONS

## ORDERS IN AID OF CONFIRMATION.

Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

## COMPLIANCE WITH TAX REQUIREMENTS.

In connection with the Plan, the Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

## AMENDMENTS.

Except with respect to treatment of Allowed Breakers Secured Claim, the Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan.  Prior to Confirmation, if a proponent files modifications to a plan, pursuant to section 1127(a) "the plan as modified becomes the plan."  No order of the Court is required to modify the Plan under the terms of section 1127(a); however, the proponent of a modification to a plan must comply with

section 1125 of the Bankruptcy Code with respect to the plan as modified. In other words, if a modification materially alters the treatment of any Creditor who has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such Creditors an opportunity to change their votes.

Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Debtor shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

## DISMISSAL OF FORECLOSURE ACTION WITH PREJUDICE.

If the Allowed Breakers Secured Claim is paid in cash in full via wire transfer on or before the Closing Deadline, Breakers will promptly dismiss with prejudice the Foreclosure Action. In the event that Breakers fails to dismiss with prejudice its foreclosure again against the Debtor that is pending in the Supreme Court of the State of New York for the County of New York. Debtor and Solera Corp. will execute any document that is reasonably necessary to effectuate same.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain jurisdiction to:

> i)      Ensure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest Holders and any other necessary party, to take such action and execute such documents to effectuate the Plan;

> ii)     Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 consistent with the terms of the Plan;

> iii)    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

> iv)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

v)    Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

vi)    Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of the Plan;

vii)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

viii)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of Article 7 of the Plan;

ix)    Resolve any and all controversies, suits or issues between the Debtor and a third-party that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

x)    Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; provided, however, that to the extent that any amendment or modification of the Plan would affect, directly or indirectly, any rights, claims or interests of Breakers or the Allowed Breakers Secured Claim under the Plan or if the Plan were not confirmed, then the written consent of Breakers will be required to amend or modify the Plan. If any amendment or modification of the Plan would not affect, directly or indirectly, any rights, claims or interests of Breakers or the Allowed Breakers Secured Claim under the Plan or if the Plan were not confirmed, then the Debtor may amend or modify the Plan without the consent of Breakers;

xi)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

xii)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

xiii)   Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

xiv)   Determine any dispute arising under or related to the Plan between the Debtor and a third-party, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

xv)   Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, or the Confirmation Order;

xvi)   Enter an Order or Final Decree concluding the Case; and

xvii)   Determine any cases involving Debtor's retained Causes of Action.

**RISK FACTORS**

Although the Debtor believes that it will be able to meet all of the obligations that it is undertaking pursuant to the Plan there can be no assurance that the Closing will occur. Each Creditor, Interest Holder and their respective advisors should consider the following factors (and other risks considered elsewhere in this Disclosure Statement).

**CONFIRMATION OF THE PLAN**

All distributions to Creditors are contingent on the Plan being confirmed by this Court. Otherwise, the Debtor is not obligated, in any way, to make the payments required hereunder.

**OPERATIONAL/FUNDING RISKS**

Because the proposed Plan calls for all payments to be made to creditors (or for reserves to be established) upon the Effective Date from the Sale Proceeds (and a guaranty by the Debtor's tenant Solera Corp, if necessary), the operational risks of a reorganization plan that provides for payments over time are not present in the Plan. Thus, the Debtor does not believe that the Plan entails any operational or funding risks, if the sale of the Property closes. If the sale of the Property does not close by June 2, 2014 (or such other date if extended), then Breakers will be entitled to conduct a foreclosure sale of the Property, in accordance with the terms of the Plan and described herein , and there will not be sufficient cash to pay all the creditors.

**VOTING INSTRUCTIONS**

The Holders of Claims in Classes 1 through 4 are unimpaired by the Plan and are deemed to accept it.   Holders of Interests in Class 5 are impaired and entitled to vote on the Plan.  A Holder of an Interest who is entitled to vote may  accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "**Ballot**") that was sent out with this Disclosure Statement.  The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

**DEADLINE FOR RECEIPT OF BALLOTS**

The solicitation period for votes accepting or rejecting the Plan will expire at 5:00 p.m., Eastern Time, _____, 2014 (the "**Voting Deadline**").  A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

**BALLOTING AGENT**

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by _____, 2014 at 5:00 p.m. to:

> **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**
> 875 Third Avenue, 9th Floor
> New York, New York 10022
> **Attention:  Steven B. Eichel, Esq.**

(the "**Balloting Agent**").  A Holder of an Interest entitled to vote who has not received a Ballot, or who's Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Steven B. Eichel at (212) 603-6345 to receive a replacement Ballot.

**WHO MAY VOTE - IN GENERAL**

Classes 1 through 4 are unimpaired and are not entitled to vote on the Plan. Class 5 is impaired and the Holders of Class 5 Interests are entitled to vote on the Plan.

**Ballots Executed in a Representative or Fiduciary Capacity.**  Ballots executed by the Debtor, executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims**.  A single form of ballot is provided for the Class of Interests.  Any Person who holds more than one Claim in the Class of Interests will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person.  Thus, each Person need complete only one ballot for the Class of Interests.

## DEFECTS OR IRREGULARITIES

**ANY EXECUTED AND TIMELY FILED BALLOT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE AN ACCEPTANCE OF THE PLAN.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots.  Neither the Debtor, the Balloting Agent, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification.  All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances.  Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

## REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS

Any Holder of an Interest who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Interest, as the case may be, if appropriate, represented by such Interest, (ii) be signed by the Holder of the Interest in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline.  The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

## ACCEPTANCE AND CONFIRMATION

**CONFIRMATION HEARING**

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on _____, 2014 at _____a.m. in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

Any party in interest may object to Confirmation of the Plan by filing a written objection, setting forth their identity and standing and the facts and authorities upon which any objection is based, in the Office of the Clerk of the Bankruptcy Court, no later than the deadline fixed by the Court and by delivering a courtesy copy to the Chambers of the presiding judge. Copies of all objections must also be served so that they are received, as required by the Court upon (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, New York 10022, Attn.: A. Mitchell Greene, Esq., and (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014. Any objection that is not timely filed and served as required by any order of this Court, will not be considered by this Court at the Confirmation Hearing.

**REQUIREMENTS FOR CONFIRMATION**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under

chapter 7 of the Bankruptcy Code. No Class of Claims are impaired pursuant to the Plan. The Plan provides for payment in Cash in full to all classes of Claims from the Sale Proceeds (and from a guaranty from the Debtor's tenant Solera Corp, if necessary).

To determine what the holders in each Impaired Class of Claims or Interest would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the chapter 7 case. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may have accrued. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a chapter 7 liquidation on the Confirmation Date. In making the comparison as to what the Creditors and Interest Holders are receiving under the Plan and in a chapter 7 liquidation, there would not be any payment by Solera Corp. in a chapter 7 liquidation.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 Trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a Trustee may engage to assist in the liquidation. In addition, chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under chapter 11, including compensation for the Debtor's attorneys, financial advisors, appraisers, accountants and other professionals whose retention was approved by the Court.

After consideration of the effects that a chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to a Trustee in bankruptcy and professional advisors to such Trustee, (ii) the erosion in value of the Debtor's assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail, and (iii) the potential increases in Claims which would be

satisfied on a priority basis or on a parity with the Holders of Unsecured Claims, and (iv) the substantial amount of secured claims in this case, which, the Debtor believes would exceed the value of the Property only in a chapter 7 forced liquidation, the Debtor believes that Holders of Unsecured Claims and Interests would not receive any distribution on account of their claims.

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor and Interest Holder recovery with a present value at least equal to the present value of the distribution which such person would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Plan provides for (i) paying each Holder of a Class 1 Priority Non-Tax Claims in Cash, in the full amount of its Priority Non-Tax Claim, (ii) paying Breakers in Cash, in the full amount of its Claim from the Sale Proceeds, or if the Sale does not close by the Closing Deadline, distributing the Property, by quitclaim deed, to Breakers in full and complete satisfaction of its Claim, (iii) paying each Holder of an Other Secured Claim the full amount of its Claim in Cash or returning its collateral to it, (iii) paying the Holders of Class 4 Unsecured Claims in full, and (v) paying the Holders of Class 5 Interests any excess Cash after all distributions are made under the Plan and preserving the Causes of Action for the Holders of the Class 5 Interests. The Debtor's available Cash on hand as of the Effective Date, including any Sales Proceeds, and the guaranty from Solera Corp., if necessary, will be utilized to fund distributions under the Plan.

The Debtor believes that in the event its assets were sold in chapter 7 liquidation, there would be insufficient proceeds to pay the full amount of the Allowed Breakers Secured Claim and the Other Secured Claims. The Debtor believes that in such event, the Holders of Unsecured Claims and Interests would not receive a distribution in a Chapter 7 case which is greater than the one they may be entitled to under the Plan.

The Debtor further believes that the net effect of a conversion of this case to chapter 7 would be to (i) increase the administrative expenses of the estate and (ii) decrease the funds available for non-administrative creditors.

The liquidation values stated herein assume that all assets of the Debtor would be liquidated in the context of a chapter 7 case and assumes the present values of such liquidation values as of February 2014. The assumptions utilized in the analysis considered the estimated liquidation value of the assets and estimated amount of Claims that would be allowed, together with an estimate of certain administrative costs and other expenses which would likely result during the liquidation process. While the Debtor believes the assumptions underlying the Liquidation Analysis are reasonable, the validity of such assumptions may be affected by the occurrence of events, and the existence of conditions not now contemplated or by other factors, many of which will be beyond the control of the Bankruptcy Court, the Debtor and any trustee appointed for the Debtor. The actual

liquidation value of the Debtor may vary from that considered herein and the variations may be material.

       The Debtor has assumed that the Contract of Sale would not be consummated by the closing Date and Property would be sold within six months in a chapter 7 liquidation. It is assumed that cash proceeds of liquidating the Property would total approximately $4,845,000 (which is 85% of the sales price of the Property pursuant to the Contract of Sale) taking into account the negative impact on values attributed to the chapter 7 process.

       The Debtor believes that the total cash which would be administered in a hypothetical chapter 7 case would aggregate approximately $4,845,000 representing the proceeds from the liquidation sale of the Property.  Upon consultation with its advisors, the Debtor assumes for the purposes of this analysis that the cash would be distributed as follows:

| | |
|---|---|
| **Available for distribution**<br>**To the payment of:** | **$4,845,000** |
| Priority Tax Claims | $0 |
| Chapter 7 Administrative Claims: | |
| Chapter 7 trustee commissions and expenses (approximately 3% of $4,845,000) | $145,350 |
| Chapter 7 trustee's professionals (attorneys, appraisers, auctioneers accountants, etc.) ($35,000) | $35,000 |
| Allowed Breakers Secured Claim | $5,553,251.95 |
| Other Secured Claim | $225,335.81[8] |
| Chapter 11 Administrative Claims | $225,000[9] |
| General Unsecured Claims | $189,289.95[10] |

---

[8] The Debtor's Schedules reflect a claim owed to the NYC Department of Finance in the amount of $100,703.48.  A claim was also filed by the NYC Department of Finance in the mount of $105,376.43.  The Debtor will review these claims and determine if these claims are duplicative and if so, an appropriate objection will be filed with the Court.  The Debtor will be reviewing the filed claims and determine whether other objections should be filed.

[9] This amount consists of estimated attorneys' fees and other Administrative Claims.

[10] This amount does not include the claims of Solera Corp. and Mr. Rufino Lopez.

**In a liquidation, there would be insufficient funds to satisfy: (1) all Claims of the Debtor's secured creditors (absent an agreement or court order); (2) chapter 11 administrative claims; (3) priority claims (if any); and (4) unsecured claims. Moreover, there would be no distribution to Holders of Interests.**

The Plan contemplates payment in full to the Creditors and a distribution to Holders of Interests. In contrast, in a chapter 7 liquidation where there would insufficient funds to satisfy all of the secured creditors, the other classes of Claims and there would be no distribution to the Holders of Interests. Accordingly, the Debtor believes that the Plan provides Creditors and Holders of Interests with at least as much as they would be entitled to receive in a chapter 7 liquidation.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. The Plan calls for the sale of the Property, distributions to Creditors from Sale Proceeds and the dissolution of the Debtor. Moreover, under the Plan, Solera Corp., the Debtor's primary tenant, has agreed to guaranty the payment to the Holders of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and the Class 4 Claims to the extent necessary to ensure that all creditors are paid in full. Based on the Summary of the Plan, the Plan meets the feasibility requirements of the Bankruptcy Code.

**Confirmation With the Acceptance of Each Impaired Class.** The Plan may be confirmed if each impaired Class of Claims or Interests accepts the Plan. The Claims in Classes 1 through 4 are unimpaired and are deemed to have accepted the Plan.

The only impaired Class is Class 5. Holders of Class 5 Interests impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. Holders of Claims not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Interests as acceptance by the holders of at least two-thirds in dollar amount of the allowed interests of such class held by holders of such interests that have accepted or rejected the plan.

**Confirmation Without the Acceptance of Each Impaired Class.** In the event that the impaired Class of Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not

accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.

Under the Plan, all Classes of Claims are deemed to have accepted the Plan. The only Class that is entitled to vote is Class 5.   The Debtor believes that the Plan is in the best interest of all Creditors and Interest Holders and strongly recommends that all parties entitled to vote (i.e. the Class 5 Interest Holders) cast their ballots in favor of accepting the Plan.   Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

*No Unfair Discrimination.*   The "No Unfair Discrimination" test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan.   The test does not require that the treatment be the same or equivalent, but that the treatment is "fair."   The Debtor believes that the Plan does not discriminate unfairly with respect to the Holders of Interests in Class 5 because there is no other class of equal priority receiving a different treatment.

*Fair and Equitable.*   Under section 1129(b)(2)(C)(i), a plan is fair and equitable as to a class of equity interests if that class of equity interests receives its liquidation preference, its fixed redemption price or its value. The Plan is fair and equitable as to the Holders of Class 5 Interests because they are (i) receiving a distribution after all distributions are made pursuant to the Plan and (ii) retaining certain of the Debtor's Causes of Action that may exist.   Thus, the Holders of Class 5 Interests are receiving the value of their equity interest in the Debtor.

If the Plan is rejected by Class 5, the Debtor requests that the Plan be confirmed under section 1129(b).

## EFFECT OF CONFIRMATION

**INJUNCTION**

Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold Claims against, or Interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the Estate retained by the Debtor or distributed to Creditors under the Plan. Unless Breakers is paid in cash in full via wire transfer the full amount of the Allowed Breakers Secured Claim on or before the Closing Deadline, nothing contained in the Plan will be deemed to release, discharge or enjoin any claim held by Breakers as under the Assignment of Lease and Rents executed by the Debtor in favor of BPD Bank dated November 9, 2006 or under the Consolidated Mortgage and Security Agreement executed by the Debtor in favor of BPD Bank dated November 6, 2006 for unpaid amounts due from or unpaid obligations owed by Solera Corp. to the Debtor with respect to the period preceding the commencement of the Case, and nothing contained in the Plan will be deemed to prevent Breakers from pursuing any such claim against Solera Corp.

**LIMITATION OF LIABILITY**

Neither the Debtor, nor any of its respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them, if any, (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with these cases or the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in Section 8.2 of the Plan shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 8 of the Plan.

RELEASES

(a) Release of Breakers.  As of the substantial consummation of the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and the Reorganized Debtor, including without limitation, any successor to the Debtor or the Reorganized Debtor, shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including avoidance actions under chapter 5 of the Bankruptcy Code), and liabilities whatsoever in connection with or in any way related to the Debtor, the Property, the conduct of the Debtor's business, the Case, any pre-petition litigation, business dealings, or agreements between Debtor and Breakers or anyone affiliated with Breakers, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Property, the conduct of the Debtor's business, the Case, any pre-petition litigation, business dealings, or agreements between Debtor and Breakers or anyone affiliated with Breakers, and that may be asserted by or on behalf of the Debtor or the Reorganized Debtor against Breakers or its designee, or any of the present or former members, shareholders, directors, officers, employees, representatives, agents and professional advisors of Breakers.

(b) Release of Debtor Released Parties.  Except as provided in Article 8.1 of the Plan, as of the substantial consummation of the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, Breakers, including without limitation, any successor to Breakers, shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including avoidance actions under chapter 5 of the Bankruptcy Code), and liabilities whatsoever in connection with or in any way related to the Debtor, the Property, the conduct of the Debtor's business, the Case, any pre-petition litigation, business dealings, or agreements between Debtor and Breakers or anyone affiliated with Breakers, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Property, the conduct of the Debtor's business, the Case, any pre-petition litigation, business dealings, or agreements between Debtor and Breakers or anyone affiliated with Breakers, and that may be asserted by or on behalf of the Breakers against the Debtor or the Reorganized Debtor, or any of the present or former members, shareholders, directors, officers, employees, representatives, agents and professional advisors of the Debtor.

(c) **Release as to Other Creditors.** Except with respect to Breakers or as otherwise provided in the Plan, upon substantial consummation of the Plane, in consideration of the Cash and other property to be distributed to or on behalf of the Holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code; any environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state.

## ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court, the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; (b) the formulation, promulgation and confirmation of an alternative plan of reorganization involving a sale (if the Closing Deadline is extended); or (c) dismissal of the Debtor's case. In the case of liquidation or dismissal, or if the Closing Deadline is not extended, Breakers will be entitled to conduct a foreclosure sale of the Property in accordance with the terms of the Plan.

The Debtor believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation. See Liquidation Analysis.

The Debtor believes that the Plan enables Creditors and Interest Holders to realize the most value under the circumstances.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim and Interest is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims and Interests should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor and Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor and Interest Holder in exchange for the Claim; (iv) whether the Creditor and Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor and Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor and Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR AND INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR AND INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AND INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR AND INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR AND INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR AND INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, New York 10022, Attn.: Steven B. Eichel, (212) 603-6345.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 4:00 p.m. and are also available for viewing on the Internet at http://www.nysb.uscourts.gov.

## CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and Interest Holders and strongly encourages all Holders of Interests to vote to accept the Plan and to evidence such acceptance by promptly returning their Ballots to ensure that they will be received not later than 5:00 p.m., Eastern Time, on _____, 2014.

**DATED:**   New York, New York
April 10, 2014

**SOLERA HOLDINGS L.L.C.**

By: _____
Rufino Lopez, Managing Member

**ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Fl.
New York, New York 10022
Tel. No.: 212-603-6300

By: _____
A. Mitchell Greene